**CERAMIC PROCESS CO. et al. v. CIN-CINNATI ADVERTISING PRODUCTS CO.**

**SOLAR LABORATORIES v. SAME.**

**Nos. 1012, 5090.**

District Court, S. D. Ohio, W. D.

July 7, 1939.

Edmund P. Wood and Truman A. Herron (of Wood & Wood), both of Cincinnati, Ohio, for plaintiffs.

Walter F. Murray (of Murray, Sackhoff & Paddack), of Cincinnati, Ohio, for defendant.

NEVIN, District Judge.

These two cases were heard together. Case No. 1012 is a suit in equity for patent infringement. No. 5090 is an action at law for a monetary recovery for royalties which plaintiff therein claims are due it under a license contract.

The Ceramic Process Company, one of the plaintiffs in equity suit No. 1012, is the owner of the legal title to Scott Reissue Patent No. 16,048, the patent in suit.

Solar Laboratories is the exclusive licensee under Reissue Patent No. 16,048 insofar as the same is applicable to stenciling on glass articles. It is joined as a plaintiff in Case No. 1012. It appears as the sole plaintiff in the action at law, No. 5090, because it alone has the right to collect and recover for any past infringement of the letters patent in suit by reason of the stenciling on any glass product, if such infringement there was.

While defendant made some claim to the effect that both actions could not be maintained, it was, nevertheless, agreed by the parties in a written stipulation filed on April 30, 1938, that "without prejudice to defendant's contention that both causes of action can not be maintained by plaintiffs" the two cases should be tried "jointly at the same hearing by the court without a jury". It was also agreed, in the record at the time of trial, that the evidence presented should be considered as applicable to both cases and to each case respectively.

It is further stipulated by the parties (Ex. 12) as follows: that

"3. The plaintiff, Ceramic Process Company, is and was at the time of the filing of the Bill of Complaint herein a Pennsylvania corporation and the sole owner of the legal title of U. S. Letters Patents in suit, Reissue No. 16,048, dated April 21, 1925; that

"4. The plaintiff, Solar Laboratories, is and was at the time of the filing of the Bill of Complaint a Pennsylvania corporation

and the exclusive licensee under said U. S. Letters Patents in suit No. 16,048, dated April 21, 1925, for the field of decorating glass articles, and is and was possessed of the exclusive right to utilize the process of said patent for the decoration of glass articles, together with the right to sue for and collect all past damage, profit, or reasonable royalty for past infringement of said Letters Patents; that

"5. The license contract identified in paragraph 13 of plaintiff's interrogatories to defendant is a true and correct copy of the license contract entered into between the defendant and the Phoenix Glass Company on or about the twenty-sixth day of June 1935, and is the contract referred to in paragraph 5 in the Bill of Complaint and paragraph 5 of the Answer in the suit, Solar Laboratories vs. Cincinnati Advertising Products Company, a correct copy of this contract being attached to this stipulation; that

"6. At the time of the signing of said contract, to wit, June 16, 1935, Phoenix Glass Company was in the possession of the right, granted by the plaintiff, Ceramic Process Company, through the plaintiff, Solar Laboratories, to said Phoenix Glass Company, to grant the license to defendant, Cincinnati Advertising Products Company dated June 26, 1935 specifically identified in the next preceding paragraph; that

"7. On or about the tenth day of October 1936, the plaintiff, Solar Laboratories, became the owner by assignment from Phoenix Glass Company of all of the right, title, and interest of Phoenix Glass Company in and to the license contract between it and the defendant, the Cincinnati Advertising Products Company, dated June 26, 1935 and specifically hereinbefore identified in paragraph 5; together with the right to maintain any and all causes of action for breach thereof and to collect damages for said breach; that

"8. On or about the tenth day of October 1936, counsel for plaintiff wrote a letter to defendant of which Exhibit 10 hereto attached is a true copy, and to which defendant's counsel sent an answer on December 11, 1936, of which latter letter Exhibit 11 is a true copy; that

"9. Between June 26, 1935 and the time of filing of the Bill of Complaint herein defendant has consistently used in commercial production (but not exclusively) a glass decorating process wherein a ceramic color comprising a powdered substance known commercially as a frit, and a coloring matter commercially known as a coloring oxide, was commingled with an oily vehicle or medium containing say two-thirds (⅔) United States Varnish #209, and one-third (⅓) Balsam Copaiba, mixed in proportions of two pounds of the ceramic color to ten ounces of the vehicle, which was then forced through a silk screen of fine mesh, such as a No. 8 or a No. 16 screen by means of a squeegee or other means, after which the decoration so applied was fused on to the glass."

While, as before indicated, defendant "contends that the plaintiffs in the law case and in the equity case can maintain only one of these cases", the point was not urged nor stressed by defendant.

The court is of opinion that plaintiffs can maintain both of these actions.

### Case No. 1012 in Equity.

In this action plaintiffs charge infringement. They pray for an injunction; for an accounting and damages. They ask that the damages "be multiplied three-fold because of the aggravated character of the infringement" complained of, and for their costs herein expended.

Defendant, in its answer, sets up the usual defenses of invalidity and non-infringement, alleging prior use and anticipation. Defendant asserts that all the steps of the process described in the Scott Patent in suit were old in the ceramic art; that a number of patents illustrate the prior art and that these are put in (Rec. p. 24) "to show the court to what this patent is to be limited if its validity is to be upheld"; that all that the patentees did was merely to exercise what was to be expected of those skilled in the art; that "there was not an iota of invention as far as the glass business is concerned", and that (Rec. p. 25) "We are not interested in whether or not the patent is valid for enamel sheet metal work, but certainly we are going to contend that if the patent is to be sustained it must be limited to that art".

### Validity.

The patent in suit, No. 16,048 (Ex. 1), is a reissue patent to Herbert Hamilton Scott and George McIntosh Scott, both of London, England. The original patent (Ex. 2) issued to the same parties is No. 1,516,065.

Defendant contends that the reissue patent is invalid because it was not reissued

in accordance with or for the reasons set forth in the statute providing for reissue. R.S. § 4916, U.S.C.A., Title 35, § 64. It is the claim of defendant that the original Scott patent, No. 1,516,065, stated that it related to vitreous enamel metal signs and described the difficulties in the making of such signs, and that each of the claims of the original patent referred to producing "metal signs"; that what the patentees sought was to broaden the language of these claims by canceling out some of the claims of the original patent relating solely to metal signs and inserting in the reissue patent "claims which they hoped would cover glass signs, by using the term 'vitreous surface'"; and that the purpose in this was "to enmesh the glass sign business" because of the demands of the glass sign manufacturers between the date of the filing of the application for the original Scott Patent, to-wit: March 26, 1923, and the date of the filing of the application for the reissue patent, to-wit: March 12, 1925.

The grounds upon which the reissue was sought are all set forth in an affidavit appearing in the reissue file wrapper (Ex. 14). The Patent Office promptly allowed the reissue, and the court thinks properly so.

There are only three claims in the patent. All are in issue. Claim 2 is typical and reads as follows: "2. Method of producing designs upon a vitreous surface which comprises placing a fine mesh stencil onto the vitreous surface and taking a pasty composition containing a finely ground enamel "frit" and an oily carrier and forcing said composition through the mesh portion of the stencil onto the vitreous surface, whereby the composition will be applied to the design portion of the surface in subdivided form, and finally heating the article to an enamel-fusing temperature."

In their patent patentees state that they "have invented certain new and useful Improvements Relating to the Production of Show Cards, Advertisements, Signs, Decorations, or the like by Stenciling".

Patentees describe their invention (Ex. 1) as follows: "This invention relates to the production of showcards, advertisements, signs, decorations or other decorative articles by stenciling, the chief object being to enable vitreous enamel metal signs and the like to be manufactured commercially in large numbers in a rapid, inexpensive and simple manner. * * * According to the present invention vitreous enamel metal signs or other decorative articles are produced by preparing a vitreous enameling composition or paint of suitable consistency and drying characteristics, applying the composition to a vitreous surface to be decorated by means of a screen or stencil of silk or other meshed material having permeable and impermeable portions, and finally heating the article so treated to a temperature sufficient to cause fusion of the vitreous composition."

The court cannot agree with the contention of defendant that the process covered by the patent does not rise to the dignity of invention. On the contrary, it seems apparent from the record that there is here not only "invention" but one of very considerable and outstanding importance. Prior to the Scott invention there was an old stencil process used in making posters, pennants and the like. Its use was limited even in that field.

As claimed by plaintiffs, the invention of the Scotts to an appreciable extent revolutionized ceramic decoration. It has in fact virtually created new lines of business, such as the decorated tumblers for the chain store and the decorated food package ware. It has "advanced the art substantially". Under such circumstances the patent is entitled to a liberal construction. In Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, at page 63, 43 S.Ct. 322, at page 328, 67 L.Ed. 523, the court say: "In administering the patent law, the court first looks into the art, to find what the real merit of the alleged discovery or invention is, and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent, to secure to the inventor the reward he deserves." See also Sun Ray Gas Corp., et al. v. Bellows-Claude Neon Co. et al., 6 Cir., 49 F.2d 886, 887, 888. While defendant now insists that it is a narrow patent it seems by its act of entering into a license contract to have recognized that the patent covered an important forward step which it was desirous of utilizing.

Some testimony was offered by defendant through the witnesses Owens, Sullivan and others as to alleged prior uses and prior invention.

Defendant also introduced evidence seeking to establish a prior use by the defendant company, or for the purpose of establishing at least a use between the date of the issuance of the original Scott Patent

and the date of application for the Reissue. The latter apparently upon the theory that defendant thereby acquired intervening rights to practice the process of the patent without payment of royalty. In this connection defendant submits that: "The testimony concerning the three ovens for bending glass discs that defendant had from 1920 up to 1924, corroborates strongly the testimony of Thies, Kolb and Bodmar, that the defendant was using the silk screen process with ceramic colors in those years, and that this prior use invalidates the Scott Patent, if its claims be broad enough to cover defendant's process."

Defendant introduced in evidence certain patents marked Exhibits A-1 to A-22. Some of these are set forth in defendant's answer, it being the claim of defendant that the Reissue Patent in suit is invalid because the alleged invention described and claimed there is set forth in the "prior United States Letters Patent" cited in the answer. As to those not referred to in the answer, counsel for defendant stated (Rec. p. 289) "the offer was made with the idea of showing the prior state of the art". No mention was made during the progress of the trial of any particular prior art patent which was being relied upon as an anticipation of the reissue patent in suit. As claimed by plaintiffs the most that can be said for the showing of the prior art patents is that they are references for various individual items of equipment usable in the Scott process, such as silk screens, ceramic colors, etc. There is no suggestion of the process itself. In fact, very few of the prior art patents cited are process patents.

■ It is well settled that a patent for a process is not anticipated by an earlier patent on apparatus unless that patent also makes a full and complete disclosure of the process in question. It is not sufficient to show a piece of mechanism by which the process *might* have been performed. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 422, 22 S.Ct. 698, 46 L.Ed. 968.

■ It is conclusively established in this circuit that proof of a prior use or anticipation must be "clear and satisfactory"— such as to convince the court beyond a reasonable doubt. Buser et al. v. Novelty Tufting Machine Co., 6 Cir., 151 F. 478; Collins v. Hupp Motor Car Corp., 6 Cir., 22 F.2d 27; United Shoe Machinery Corp. v. Day Wood Heel Co., 6 Cir., 46 F.2d 897; Westinghouse Electric & Mfg. Co. v. Wadsworth Electric Mfg. Co., 6 Cir., 51 F.

2d 447. See also The Barbed Wire Patent, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154; Eibel Process Co. v. Paper Co., supra.

■ The proof offered by defendant to establish its claim as to prior use or anticipation falls far short of that required by the authorities. Defendant's claims in these respects are not proven by the degree of proof required.

Finally, the record shows that the Scott invention has enjoyed very substantial commercial success. Were there any doubt as to the validity of the patent—and the court entertains none—it is well settled that commercial success may be considered as an element resolving that doubt in favor of the patentee. The Scott Reissue Patent in suit is valid as to each of the claims thereof. It is not confined to a method of producing metal signs.

### Infringement.

On May 28, 1937, plaintiffs filed certain interrogatories to be answered under oath by an officer of defendant having knowledge of the facts. Interrogatory No. 14 is as follows: "14. Is there any difference in the process of decorating gasoline globes which defendant has used between November 10, 1936 and February 23, 1937 and that which defendant was using on September 26, 1935." On July 26, 1937, defendant, through its president, answered plaintiffs' interrogatories, and in reply to Interrogatory No. 14 stated: "14. No difference." Thus it appears from the answer to Interrogatory No. 14 and the stipulation, Exhibit 12, that the process of decorating glassware used by defendant had remained the same from the time it accepted its license in June, 1935, to the filing of the bill of complaint on February 23, 1937.

During the trial there was some suggestion upon the part of defendant that there was a difference between glass and enamel and that the preamble of the claims which refer to a vitreous surface did not include a glass surface. As to this, however, Mr. Owens (a witness on behalf of defendant) testified (Dep. p. 15, 46) as follows:

"A. Yes, there should be no foreign substance in glass enamel when applied to a surface and enamel is a glass itself. There should be no foreign ingredients otherwise it will not be a ceramic job—it will be ruined. After all the object of ceramic firing is to fuse glass into glass without the presence of a foreign sub-

stance or it would not be a ceramic job. * * *

"Q. Would you consider an enamel of the type of Exhibit 2 in any way analagous to glass? A. Yes.

"Q. On what account? A. Because it is a glass enamel, itself.

"Q. What is glass itself? A. The surface on which that is painted.

"Q. Exhibit 2—Defendant's Exhibit 2? A. Yes.

"Q. You say porcelain enamel is glass? A. Porcelain enamel is glass."

Webster's Dictionary defines "enamel" as "a vitreous composition" and "vitreous" as "of, pertaining to, or derived from, glass."

The court is of the opinion that defendant's answers to the interrogatories and the stipulation, Exhibit 12, in and of themselves establish infringement of claims 1 and 2, and that the record shows that infringement of claim 3 is established by the testimony of Mr. Mattman, president of the defendant company.

Upon a consideration of all of the evidence, as disclosed by the record, and the law applicable thereto the court has arrived at the following:

### Findings of Fact.

1. Plaintiff, The Ceramic Process Company, is the owner of the legal title in and to Letters Patent of the United States, Reissue No. 16,048, issued April 21, 1925, to Herbert Hamilton Scott and George McIntosh Scott for "Production of Show Cards, Advertisements, Signs, Decorations or the Like, by Stenciling."

2. Plaintiff, Solar Laboratories, is exclusive licensee under said United States Letters Patent, Reissue No. 16,048, insofar as the same is applicable to stenciling on glass articles, and is possessed of the sole and exclusive right to collect and recover all claims for past infringement of said Reissue Letters Patent No. 16,048 by reason of stenciling on any glass product.

3. Herbert Hamilton Scott and George McIntosh Scott are the original, first, and joint inventors of the process of decorating vitreous surfaces described and claimed in Reissue Letters Patent No. 16,048 and the inventions, described and claimed therein, are not disclosed in the prior art patents pleaded and/or offered in evidence by the defendant, regardless of whether such patents are considered alone or in combination.

4. The prior public uses and/or inventions set up and relied upon by the defendant, and particularly those of Frank L. Sullivan, Samuel Theis, Oscar Hommel, Frank C. Allabach, Edward A. Owens, Roy Beck, and Jacob Steinman, did not consist of the practice of the process of the Scott patent in suit.

5. Defendant has failed to prove any prior use or anticipation beyond a reasonable doubt.

6. In view of the prior art as disclosed in the testimony and the exhibits offered by the defendant, it required the faculty of invention to develop the process disclosed and claimed in the Scott Reissue Letters Patent No. 16,048.

7. The defendant, The Cincinnati Advertising Products Company, has not acquired any rights, express or implied, to practice the inventions of Reissue Letters Patent No. 16,048, by reason of its activities prior and subsequent to March 26, 1923, the application date of the Letters Patent in suit.

8. The inventions disclosed and claimed in the Reissue Letters Patent No. 16,048 are applicable to decoration of all vitreous surfaces, including glass and vitreous enamel. They have gone into extensive commercial use in the glass and vitreous enamel industries and have proven of great value in both industries.

9. The defendant, The Cincinnati Advertising Products Company, is a former licensee under the patent in suit; the License Agreement identified in paragraph 13 of plaintiffs' interrogatories is a true and correct copy of the license contract entered into between the defendant and the Phoenix Glass Company, on or about the 26th day of June, 1935. It was effectively terminated as of November 10, 1936.

10. Subsequent to the termination of said License Agreement and prior to the filing of the Bill of Complaint herein, defendant has infringed United States Letters Patent Reissue No. 16,048, by the use in its plant at Cincinnati, Ohio, of a process of decorating flat glass, which process embodies each of the inventions disclosed and claimed in United States Reissue Letters Patent No. 16,048.

11. The defendant was notified by plaintiff, Solar Laboratories, of infringement of said Letters Patent Reissue No.

16,048, but failed and refused to cease and desist from said infringement.

12. United States Reissue Patent No. 16,048 is valid as to all of the claims thereof.

#### Conclusions of Law.

1. Letters Patent of the United States, Reissue No. 16,048, issued April 21, 1925, for "Production of Show Cards, Advertisements, Signs, Decorations or the Like, by Stenciling," is good and valid in law as to each of the claims thereof.

2. The process of decoration of flat glass employed by the defendant, The Cincinnati Advertising Products Company, subsequent to November 10, 1936, and prior to the filing of the bill of complaint herein, embodies the invention or inventions set forth in the claims of the said Letters Patent and each of them, and defendant has infringed each of the claims of the aforesaid patent by the use of said process at its plant at Cincinnati, Ohio.

3. Plaintiffs are entitled to a writ of permanent injunction, enjoining defendant from the further use of a process which infringes plaintiffs' aforesaid United States Reissue Letters Patent No. 16,048.

4. Plaintiff, Solar Laboratories, is entitled to recover from the defendant for profits and gains realized by defendant and damages suffered by plaintiffs by reason of the aforesaid infringement of United States Reissue Letters Patent No. 16,048, and plaintiffs are entitled to recover their costs and disbursements in accordance with statutes and rules in such cases made and provided.

Decree accordingly.

#### Case No. 5090 at Law.

This is an action at law based upon the alleged breach of contract by the defendant. The contract is a license agreement made on the 26th day of June, 1935, between the Phoenix Glass Company and the defendant herein.

All the formal matters were stipulated (Ex. 12), that is, it was stipulated that the license contract identified in paragraph 13 of the interrogatories is a true and correct copy of the license contract entered into between the defendant and the Phoenix Glass Company on or about the 26th day of June, 1935, and is the contract referred to in the action at law; that Phoenix Glass Company had the right to grant the license to the defendant; that on October. 10, 1936, Solar Laboratories became the owner by assignment of all of the right, title and interest of the Phoenix Glass Company in and to the license contract together with the right to maintain any and all causes of action for breach thereof and to collect damages for the breach.

Defendant's answer consists largely of a general denial. It sets up, however, two affirmative defenses. In these respects it claims first that plaintiff itself breached the contract, and that this breach was of a clause, the language of which it asserts is ambiguous. Defendant submits that the understanding of the parties, however, is proven by the testimony of witness Andrew H. Stewart, and second that the contract is illegal because it attempts to extend the monopoly of the Scott Reissue Patent No. 16,048 to a subject matter not covered by the patent. In other words, defendant claims in this respect that the contract violates the provisions of the Sherman and Clayton Acts.

1. Defendant was unable to point out any specific provision of the contract which the Phoenix Company (predecessor of the plaintiff herein) failed to perform. This is shown by the testimony of Mr. Mattman, president of defendant company (Rec. p. 191).

Counsel for defendant, in their brief (p. 55), state that: "The ambiguous part of the contract is contained in clause 12. 'Phoenix and The Cincinnati Advertising Products Company. covenant and agree with each other that each shall use all reasonable means to maintain said patents valid at all times.'" However, the license agreement itself (and the parties have stipulated as to its correctness) shows that the quotation just above given is not contained in paragraph 12 but is the whole of paragraph 11 of that agreement.

Regardless of whether or not paragraph 11 is in any respect ambiguous, the record shows, as plaintiff submits, that Phoenix did everything that could reasonably have been expected of it until further royalties were paid by defendant herein and the other sub-licensees.

2. The contract is not illegal and does not violate the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, or Clayton Act, 38 Stat. 730. It has been repeatedly held that it is the patent owner's prerogative to fix the terms and conditions on which a licensee may operate, so that the licensee does not and cannot destroy the

value of the invention. United States v. General Electric Company et al., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362; Bement & Sons v. National Harrow Company, 186 U. S. 70, 22 S.Ct. 747, 46 L.Ed. 1058.

Some of the evidence applicable to this case—in addition to that stipulated—has already been referred to in Cause No. 1012 in Equity, supra. The provision with respect to the payment of royalty by the defendant under its contract of June 26, 1935, with the Phoenix Glass Company (Paragraph 4) reads as follows: "4. On all flat glass in the manufacture of which Cincinnati uses any of the inventions herein licensed, Cincinnati agrees to pay Phoenix a royalty of five per cent (5%) of the net selling price of the net sales thereof during the life of this agreement, the term 'net sales' being here defined as all sales made by Cincinnati and accepted by its purchasers, said royalty to be paid by Cincinnati not later than the fifteenth (15) day of each calendar month on all said sales made by it during the preceding calendar month."

Upon a consideration of all of the evidence, the court finds that plaintiff is entitled to recover damages from defendant "for breach of contract in an amount equal to the balance due as royalties" (under the license contract) as prayed for in its petition.

As the question of accounting, in order to determine the exact amount of such damage due plaintiff, is obviously not a simple matter, this cause will be referred to a master to determine the amount due plaintiff.

Upon a consideration of all of the foregoing, and the whole of the record and the law applicable thereto, the court has arrived at the following:

### Findings of Fact.

1. Plaintiff, Solar Laboratories, is a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania. Defendant, The Cincinnati Advertising Products Company, is a corporation organized and existing under and by virtue of the laws of the State of Ohio.

2. The Phoenix Glass Company and the defendant entered into a written license contract as of June 26, 1935. The copy of this contract attached to the petition herein is a true and correct copy of said contract.

3. At the time this contract was entered into the Phoenix Glass Company had the right to license the defendant to use the inventions of Scott Reissue Patent No. 16,048 in the stenciling of flat glass with a silk screen or other screen at its plant in Cincinnati, Ohio.

4. By assignment from the Phoenix Glass Company, plaintiff, Solar Laboratories, is possessed of the entire right, title and interest of the Phoenix Glass Company in and to said contract of June 26, 1935, between Phoenix Glass Company and the defendant, together with the right to collect and receive all money due or to become due on said contract and all actions and causes of action against defendant.

5. The Phoenix Glass Company and plaintiff performed all of their obligations to the defendant under said contract of June 26, 1935.

6. Between June 26, 1935, and November 10, 1936, the defendant continuously utilized the process disclosed and claimed in the Scott Reissue Patent No. 16,048 in the stenciling of flat glass with a silk screen, or other screen, at its plant in Cincinnati, Ohio.

7. Defendant committed a breach of said contract of June 26, 1935, by refusing to pay the Phoenix Glass Company and plaintiff the royalties due under said contract, in accordance with the provisions thereof.

8. The contract of June 26, 1935, was effectively cancelled by plaintiff as of November 10, 1936, because of the default by the defendant in the payment of royalties due thereunder. This cancellation was accepted by the defendant.

9. There is due plaintiff from defendant as damages for breach of contract a sum of money equal to five per cent (5%) of the net sales by defendant of products manufactured under the license granted by said agreement of June 26, 1935, less the sum of Five Hundred Dollars ($500) paid by defendant to the Phoenix Glass Company on September 18, 1935. The total sum due is conceded by defendant to exceed the sum of Three Thousand Dollars ($3,000), exclusive of interest and costs.

10. The method of decorating vitreous surfaces described in the Scott Reissue Patent No. 16,048 is equally applicable to vitreous enamel signs and flat glass.

11. The contract of June 26, 1935, between the Phoenix Glass Company and the defendant was entered into by both parties in good faith as a license under a patent

which the defendant was infringing and wished to continue to utilize. It was not entered into as a pretext for controlling the selling price of glass signs.

### Conclusions of Law.

1. The contract of June 26, 1935, between Phoenix Glass Company and the defendant is a good and valid contract and neither the contract itself nor the course of conduct of the parties thereunder is contrary to the provisions of the Sherman or Clayton Acts.

2. Plaintiff is entitled to recover from defendant for breach of said contract of June 26, 1935, a sum equal to five per cent (5%) of the net selling price of the net sales by the defendant of products manufactured under the license granted in said contract, less the sum of Five Hundred Dollars ($500).

3. The contract of June 26, 1935, should be interpreted to require the payment of royalties by the defendant on (a) glass globes to which were affixed, at the time of sale, bent glass discs decorated in accordance with the method disclosed and claimed in Scott Reissue Patent No. 16,048; (b) decorated glass discs sold separate from the globes; (c) other flat glass signs.

4. Because of practical difficulties connected with the determination of the exact amount of damages due plaintiff for breach of said contract of June·26, 1935, this cause shall be referred to a master with instructions to determine the amount due plaintiff, in accordance with these findings of fact and conclusions of law.

Judgment accordingly.