## CERAMIC PROCESS CO. v. GENERAL PORCELAIN ENAMELING & MANUFACTURING CO.

### No. 7860.

Circuit Court of Appeals, Seventh Circuit.
July 16, 1942.

Rehearing Denied Aug. 17, 1942.

Max W. Zabel and Edward U. Dithmar, both of Chicago, Ill., for appellant.

---

Lee J. Gary, of Chicago, Ill., and Edward B. Evans and Truman A. Herron, both of Cincinnati, Ohio, for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellee charged appellant with the infringement of all three claims of United States reissue patent to Scott, No. 16,048. The answer alleged invalidity and non-infringement. The court found each claim valid and infringed, and referred the cause to a master for an accounting.

The reissue patent before us expired on November 18, 1941, hence an injunction provided in the decree has terminated. However, appellant is alleged to have infringed the patent on a large scale since 1936, and this is the principal issue presented here. The original Scott patent was issued November 18, 1924. An application for reissue was filed on March 12, 1925, and granted the following month.

The patent is in the art of decorating vitreous surfaces such as enamel signs of the type commonly used for outdoor advertising. It is a method or process patent, and has enjoyed a continuously active life. By purchase and assignment, the patent subsequently became the property of appellee, and the process is in daily use by practically all of the porcelain enamel manufacturers in this country. It is useful in decorating glass as well as porcelain enamel, the latter being nothing more than a particular kind of glass. It was held valid and infringed in Ceramic Process Company et al. v. Cincinnati Advertising Products Co., D.C., 28 F.Supp. 794. It is true, as appellant here urges, that in that action the issues were not identical with those here, and a former licensee was the defendant. However, patent infringement was alleged, as was also a breach of contract, and the appellee prevailed as to both issues.

The process of the patent before us involves generally a series of steps comprising the preparation of a mix of frit (powdered glass), coloring oxide and an oily fluid (called a "carrier"), forcing the mix through the mesh of a screen stencil onto a vitreous surface to be decorated, and then exposing the design and surface to an enamel-fusing temperature. The process provides for the application of a decorative layer of glass to a glass surface so that the design or decorative layer become integral with the surface and fully resistant to any form of exposure which can be endured by the surface itself. The equipment necessary to practice the process forms no part of the invention. The screen stencil usually is fashioned from silk or wire mesh having pervious and impervious portions. The impervious outline which forms the design may be placed on the mesh in any one of a number of different ways. The instrumentality used to force the mix through the stencil is usually a rubber scraper called a "squeegee." There is no appreciable difference between claims 1 and 2. We set forth claims 2 and 3.[1]

A study of this record convinces us that the claims are valid, and we agree with what was said on this subject in the Cincinnati Advertising Products case, supra. While the issue of validity is presented here, it is not argued with such earnestness as to be convincing. The appellant states that it is not dependent upon the invalidity of the patent for a reversal, yet it urges that in the public interest the patent should be held invalid upon the prior

---

[1] "2. Method of producing designs upon a vitreous surface which comprises placing a fine mesh stencil onto the vitreous surface and taking a pasty composition containing a finely ground enamel 'frit' and an oily carrier and forcing said composition through the mesh portion of the stencil onto the vitreous surface, whereby the composition will be applied to the design portion of the surface in subdivided form, and finally heating the article to an enamel-fusing temperature.

"3. Method of producing multi-colored vitreous enamel designs and other decorative articles which comprises successively applying component parts of a design of different colors to a vitreous enamel surface by successively placing onto the vitreous enamel surface a mesh stencil for each component color of the design, forcing through the mesh portion of each stencil a pasty composition containing finely ground vitreous enamel frit and an oily carrier and of desired color, and between successive applications of such composition to the surface, drying the component of the design thus applied, at a temperature insufficient to fuse the enamel of the composition, and finally heating to an enamel-fusing temperature the article bearing the multi-colored design."

art cited by the Patent Office. As typical of that prior art, it relies on United States patent to Beck et al., No. 1,254,764, and upon the file wrapper disclosures of the original United States patent to Scott, No. 1,516,065, and those of the patent in issue. We cannot agree with appellant's contention that in the public interest the patent should be held invalid upon the prior art cited by the Patent Office. That art was afterwards rejected by the Patent Office when it issued the patent before us and we think the action of that office was quite logical and sound.

Of all the art thus cited by the Patent Office, appellant designated for printing in the record only one patent, No. 1,254,764 to Beck, et al. That patent developed a process of screening poster paint on cardboard and cloth surfaces. The Patent Office recognized the difference between decorating on ceramic surfaces and decorating on any other surfaces. The extreme heat required to fire a ceramic decoration could not be applied to most of the materials contemplated by the Beck patent. The Patent Office recognized this fact and granted the Scott patent over Beck, which was the principal file wrapper reference. The Scott process requires the use of three specified materials, or their equivalents. The Beck process is not concerned with any particular selection of materials. The Beck process does contemplate the use of a silk screen of a type similar to Scott. However, there is no other resemblance between the two processes. We think the claims are valid.

The principal question raised here is that of infringement, and it narrows down to the construction of the word "pasty," which is used in the claims of the patent to describe the consistency of the mix at the time it is forced through the interstices of the screen. It is urged by appellant that the Scotts by amendment during the progress of the original patent and by the reissue patent, limited themselves to a mixture so thick that when forced through the screen it would be deposited on the vitreous surface in little individual dots or mounds, each of which would be completely separated from the others and would remain so until the firing operation.

We cannot agree with this contention. The patent before us describes with particularity the nature and proportions of ingredients to be used in accordance with the preferred form of the invention, and by this we think it cannot be said that the Scotts gave any limited or secondary meaning to the word "pasty."

A reading of this record convinces us that neither the Scotts nor the Patent Office considered the word "pasty" to have any peculiar significance. We agree with appellee's contention that what was evidently intended was a degree of viscosity in the combined materials, which would permit their use in cooperation with a screen stencil in such a way that they would not run off the edges of the design and would form and preferably retain a corrugated and subdivided surface in the body of the design. The record, we think discloses that appellant uses the preferred form of the process. It forms a mix of frit, coloring oxide and an oily carrier, and it forces this composition through the mesh of a screen stencil onto a vitreous surface. This composition is applied to the surface in subdivided form and the article is finally heated to an enamel-fusing temperature. We are convinced that this process is a literal infringement of claims 1 and 2. According to appellant's testimony with respect to its multi-color process, the colors are dried one at a time, and this unquestionably constitutes a literal infringement of claim 3. If it be assumed that there is a slight difference between the viscosity of the appellant's material and that of the preferred form of the patent, and that appellant's designs run together more and are less subdivided than was advocated by the Scotts, yet there would be no real avoidance of the substance of the patent. Colgate-Palmolive-Peet Co. v. Lever Bros., 7 Cir., 90 F.2d 178.

With respect to the file wrappers and the reissue, appellant urges that it does nothing more than follow the teachings of the original petition and the amendment of the original patent, and that when the reissue patent was granted, the disclosures of the original patent were thereby limited by the reissue, and that it was at liberty to avail itself of the disclosures of the original patent except as they were limited by the reissue. This would of course be true, if appellant went no further, but a complete answer to this contention is that appellant literally infringes the reissue claims, unless we hold that appellee is limited by the definition of the word "pasty." This we decline to do.

The record discloses that when the Scotts filed their United States application, it was treated by their attorneys not as an improvement but rather as an invention of pioneer scope. The Patent Office disagreed and said the invention was only of an improvement character in view of the Beck patent. Whereupon it was suggested by Scotts that Beck had no relation to the application of glass on glass. This suggestion was recognized by the Patent Office, and the claims were then allowed and a description of the texture or the subdivision of the surface of the decorated material, which was potentially capable of becoming glass itself, was inserted in the specification.

In obtaining the allowance by retreating from the claims originally filed, the Scotts concluded that the claims which the Patent Office had allowed were of questionable definiteness in describing the invention over what had been done by prior patentees. From both file wrappers it is clear that the Scotts were only seeking an actual definition of the metes and bounds of their invention in the light of the prior art. That it was originally claimed in broader form, and that the claims were subsequently narrowed, lends no aid or support to appellant because it infringes the narrower claims. In such event there can be no file wrapper estoppel because appellant uses the process of the patent even though the cancelled claims broadly described the process. Appellant cites the recent case of Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. ——. We consider it inapplicable to the facts here presented.

It is quite true that the cancelled claims contained the expression "paint-like," and the word "pasty" was substituted therefor. This change was made to emphasize that Scotts' material contained frit and to distinguish it from the material used in the Beck patent, which was poster paint. These facts are not sufficient to authorize appellant to describe its composition as "paint-like" instead of "pasty" and thus avoid infringement, because a "paint-like" composition is "pasty." In this argument for the first time appellant refers to its material as liquid enamel, but this in no way changes the nature of the material. It is still a mixture of frit, oxide and oil, and exactly as specified in the patent and in direct contrast to Beck's cold color material.

We think infringement is clear, and the decree of the District Court is hereby affirmed.