**STONE et al. v. HALLAN et al.**

Civ. No. 2076.

United States District Court, N. D. Texas, Fort Worth Division.

Dec. 12, 1951.

Carrington, Gowan, Johnson & Walker, and Matthews & Nash, all of Dallas, Tex., for plaintiffs.

Lattimore, Couch & Lattimore and Cecil L. Wood, all of Fort Worth, Tex., for defendants.

DOOLEY, District Judge.

The plaintiffs sue the defendants for alleged infringement of Patent No. 2,092,

659 covering a termite shield issued September 7, 1937 to the plaintiff Albert C. Stone. Another Patent, No. 2,176,598 covering a termite shield issued October 17, 1939 to Alfred A. Tennison and James D. Tennison, also comes into view, as the defendants purport to act as licensees thereunder, but said patent at best is limited to an improvement in the wall attached section of termite shields and may be dismissed without further notice.

The said Stone patent is ruled valid, but a closer question is presented in respect to infringement. The defendants rely strongly on a contention of file wrapper estoppel. The application Stone filed for his patent contained five claims, including two specifying a "metallic strip", and three specifying a "strip of material", and as examples claims 1 and 3 are here copied.

"1. In combination with a concrete building foundation, an insect shield comprising a metallic strip arranged for securement to said foundation intermediate its base and superstructure and throughout its length, said strip having an upper flange at right angles to its plane and a lower flange disposed at an acute angle relative to the plane of said upper flange.

"3. In combination with the foundation of a building, an insect shield comprising a strip of material affixed to and extending the length of said foundation, a skirt portion formed on said strip and extending outwardly from its mounting at an angle relative to the plane of said strip and means formed along the upper edge of said strip to retain an insect retardant."

The Patent Office examiner rejected all five of said claims on reference to Patent No. 2,012,651 covering an insect trapping and exterminating device issued August 27, 1935, to one Beall. In response Stone cancelled his original claims 2 and 4 and entered amendments to his claims 1, 3 and 5, and in his communication covering such action sought to differentiate his termite shield from the Beall insect trap. In turn the examiner again rejected the three remaining claims as amended on reference still to the said Beall patent. The applicant Stone then, instead of attempting to again amend the three pending claims, abandoned same, and presented a single new claim, which was allowed and is found in the said Stone patent. It reads as follows: "As a new article of manufacture, a repellant for termites and other insects comprising the combination with a concrete building foundation of a metallic strip as a body portion for said repellant, arranged for securement to the face of said foundation intermediate its base and superstructure and throughout its length, said body portion having an upper flange at substantially right angles to the plane of said body portion and the face of the foundation to which the latter is secured whereby to form a shelf for retaining a solid insecticide composition, said body portion also having a flange on its lower edge disposed at an obtuse angle relative to the plane of said body portion and means for affixing said body portion to said foundation."

The said final claim in the Stone patent, as would be expected, shows some pains taken to specify differences from the Beall patent, such as "repellant" instead of "trap" for termites, and "solid insecticide" instead of liquid insecticide, but the evolution of the Stone claims in the Patent Office does not show any surrender bearing on the lower flange disposed at an obtuse angle in the device. The fact that the Beall device shows an outwardly extending flange is immaterial under the present circumstances. In the first place the applicant Stone never during the pendency of his application made any change in his first claims or in the final claim as a concession to that feature in the Beall device. The Beall outwardly extending flange was in the nature of a cover over but spaced apart from the trough holding the liquid insecticide and curved downwardly towards the outer edge. The Stone outwardly extending flange has always been described in the patent drawings and specifications as flat but inclined at an obtuse angle. It might be, though still debatable, that if the two flanges had been more alike, an examiner's objection on that ground, followed by Stone changing to a straight flange, would have raised some

semblance of an estoppel, but nothing of the sort is reflected in this record. In the second place since the said outwardly extending flange in the Beall device had no functional purpose so far as contact with insects is concerned, while the said lower flange of the Stone device does have the very functional purpose of contact with insects, it is hardly likely that either the examiner or Stone ever had in mind the slightest relinquishment by Stone in relation to the said lower flange of his device. The heart of the Beall patent is the trap formed by the trough of liquid insecticide. The heart of the Stone patent is the outwardly and downwardly extending flange acting as a barrier to the insects which for some reason on coming down the underside of said flange to the edge are unable to mount around said edge to the upper side of the flange. In other words the difference in principle between the two patents partakes of the difference between a curb and a pitfall. The most plausible view about the Patent Office history is that on further thought "the examiner changed his mind" [1], and if so then more certainly there could be no estoppel.

The theory of defendants in contesting the charge of infringement herein might be stated a little more broadly, but I think the only important point of it is the contention that the Stone patent is committed strictly to a straight lower flange all in one plane, while the devices defendants have sold used a lower flange which extended first at a right angle for about half its extent and then turned downward at an obtuse angle the remaining distance to the edge of the flange. Of course there are frequent instances of file wrapper estoppel which will hold a patentee to the strict terms and forms of his specifications and claims, excluding any latitude of equivalents, but I do not think that the Patent

Office history in this instance is a sufficient foundation for that rule.[2] The claim finally allowed retained all the features of the preceding claims material to this controversy, and at any rate if the transition from the original claims to the final claim does mark any real contraction by the applicant Stone it cannot be traced in a way to deny the patentee such a slight latitude sufficient to uphold the charge of infringement against . defendants. It is held that the defendants have infringed.

A decree will be entered for plaintiffs perpetually and permanently restraining further infringement by defendants and providing for accounting of damages to be settled in a later decree.

1. Westinghouse Electric & Mfg. Co. v. Condit Electrical Mfg. Co., 2 Cir., 194 F. 427.

2. Smith v. Snow, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721; Vrooman et al. v. Penhollow et al., 6 Cir., 179 F. 296; E. H. Bardes Range & Foundry Co. v. American Engineering Co., 6 Cir., 109 F.2d 696; J. L. Owens Co. v. Twin City Separator Co., 8 Cir., 168 F. 259; Ceramic Process Co. v. General Porcelain Enameling & Mfg. Co., 7 Cir., 129 F.2d 803; Beadle v. F. W. Woolworth Co., D.C., 17 F.Supp. 830; Trico Products Corporation v. Rico Mfg. Co., D.C., 45 F.2d 599.