## HIGHWAY APPLIANCES CO. v. AMERICAN CONCRETE EXPANSION JOINT CO. et al.

### No. 6261.

Circuit Court of Appeals, Seventh Circuit.

Nov. 19, 1937.

Rehearing Denied Jan. 5, 1938.

Casper William Ooms and Albert G. McCaleb, both of Chicago, Ill., for appellant.

Samuel W. Banning, of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and Lindley, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a decree of the District Court dismissing appellant's bill of complaint which charges infringement of claims 6, 9, 10, and 12 of patent No. 1,586,326, issued to Clifford Older May 25, 1926, and assigned by him to appellant. The claims are found in the footnote.[1]

The title of the Patent is "Metallic Expansion Joint for Concrete Roads and the Like," and is directed to the problem created by the constant expansion and contrac-

---

[1] 6.—An expansion joint for concrete roads and the like comprising a pair of side walls adapted to engage the ends of adjoining concrete sections, an upper edge wall fixedly joined to the upper edges of said side walls, said edge wall comprising a portion of curved cross-section permitting lateral converging and

tion of slabs of concrete highway resulting from the change of temperature and climatic conditions.

Before the date of the patent in suit certain lengths of pavement were separated with a forming board as the concrete was poured. When the concrete had set, this board was removed and the intervening space filled with a bituminous material such as asphalt or tar. It was also common practice to insert a premolded slab of bituminous material between the sections of concrete, which was left in position after the highway was formed. In either instance, this material, which was not compressible, would be forced out of the expansion joint when the highway expanded, and would not return to place upon subsequent contraction. As a result, spaces would be left between the concrete slabs which sooner or later would become filled and packed with dirt and other substances, preventing the natural expansion of the concrete. Caring for this situation required a great deal of labor and expense incident thereto. The problem was further complicated by the requirement that the adjoining slabs of concrete be in some manner keyed or fastened to each other so that the weight of passing vehicles would not destroy the ends of the slabs. It was also essential that they be joined in such way as not to interfere with the expanding movement of the slabs. The device, in rather familiar use, at and prior to the time of the issuance of the patent in suit, was known as dowel bars. These bars and similar devices were extended longitudinally with the highway and served as connectors between adjacent slabs. The problem of providing an expansion space was further complicated by the necessity

for the use of such bars or connecting rods. If forming boards were used, it was necessary to provide recesses which would permit the passage of these dowel bars in such a manner as would not prevent their removal after the bars had become embedded in the hardened concrete. If preformed boards were used, it was necessary to provide openings in these boards through which the bars could be inserted. When this system was followed, the board, as well as the dowels, was left in position after the formation of the highway.

It is at once apparent with the rapid extension and building of highways, it was essential that an expansion joint be provided which would meet the requirements of the situation, both in the construction of the highway and its subsequent use.

Clifford Older, with eighteen years of experience in the Illinois Highway Department, undertook to solve the problem and, as a result, obtained the patent in controversy.

In the specification, after a recitation of the defects existing in expansion joints and the difficulties presented in connection therewith, the patentee states: "I have obviated the foregoing difficulties by providing a metallic expansion joint construction having a wide range of expansion and contraction and characterized by the ability to re-expand to its former width, or even to a greater width when necessary, the joint being so related to the concrete sections that the device will always fill the entire width of the expansion space, irrespective of the degree of contraction of the concrete and the width of said space. Thus, there is no possibility of the concrete separating from the metallic joint when

separating movement of said side walls relative to each other, anchoring extensions projecting from said side walls for anchoring the latter to the ends of their respective concrete sections, and re-enforcing means extending between said side walls intermediate their upper and lower edges for preventing injurious vertical movement between said side walls.

9.—An expansion joint for concrete roads and the like constructed in the form of a relatively narrow metallic envelope comprising spaced side walls flexibly joined together at their upper edges for lateral converging and separating movement relative to each other, means for anchoring said side walls to the ends of the adjoining concrete sec-

tions and re-enforcing means extending between said side walls, said re-enforcing means having free sliding movement in an opening in one of said side walls.

10.—An expansion joint for concrete roads and the like comprising a pair of side plates, flexible means joining the upper edges of said side plates, and means for preventing relative vertical movement between the adjoining sections of concrete.

12.—An expansion joint for concrete roads and the like comprising a pair of side plates, laterally compressible means joining the upper edges of said side plates, and dowel pins extending through both of said side plates and adapted to extend into the adjoining concrete sections.

contracting and allowing dirt and stones to enter between the concrete and the joint." The specification then proceeds with a description of the metallic expansion joint which is shown in the patent drawings. Attention therein is called to the fact that the joint is constructed of two side plates which have a depth slightly less than that of the concrete section; that the same are to extend across the entire width of a road of standard two car width, joined at their upper and lower edges by corrugated plates, the upper plate to serve as a seal and to the necessity of anchoring the side plates to the concrete so that the same will move with the concrete slabs during expansion and contraction, thus preventing the intrusion of any foreign matter into air space from above. It is then suggested that a suitable plastic material may be poured on top of the joint to a depth such that it will not be forced above the concrete when the space between the slabs is reduced because of the expansion thereof. Then follows a discussion as to the manner in which the dowel bars may be used in connection with his device so as not to interfere with their recognized function.

Defenses interposed were invalidity and noninfringement. The District Court found for appellees on the defense of noninfringement, but made no finding upon that of validity. We shall first deal with the defense of noninfringement. In so doing it seems important to state the claims of the respective parties with reference thereto. Under the designation of "contested issues," appellant states: "The question of infringement is reduced to the rather narrow issue of whether or not the metallic expansion joint made and sold by the defendants and exemplified in Plaintiff's Exhibits 8 and 9 in Defendant's Exhibit 4 is the mechanical equivalent of the device shown and claimed in the patent in suit, i. e., whether or not the joint charged to infringe escapes the claims because of the fact that the defendant has made the side walls of its expansion joint, in part, in two laminations, which are securely clipped together during the installation of the joint but which may be separated after the lower portions of the side walls have served the functions for which they are designed."

On the other hand, appellees state: "The real issue is far more fundamental than that suggested in the above quotation. It includes rather a consideration of the question as to whether or not Older had successfully solved the problems involved in the practical application of his alleged invention to road building methods. The issue is not whether a two-part device is to be regarded as the equivalent of a one-part device, but whether the Older device, which is defined solely as a sealing joint, can properly be compared with the defendants' group of devices, one of which is a sealing device and the other of which is merely a pouring form having no relation to the sealing function."

Appellees' commercial device, alleged to infringe, is composed of what is referred to as a seal and a stool, the former mounted upon the latter. The seal is of a hairpin type, the sides of which extend over and along the upper sides of the stool where they are turned at right angles and securely embedded in the concrete. The walls of the stool are claimed to constitute a pouring form against which the concrete is poured. The sides of this form are braced so that the form may be held rigid during the pouring process, but in such a way as not to interfere with the expansion of the concrete. In fact, it is said that this stool or pouring form serves no function other than as a barrier during the pouring operation and that after the concrete becomes hardened there is nothing of appellees' device which is intended to function or does function except the seal. Provision is made, of course, for the use of the dowel bar in a manner not essentially different from the manner in which it is to function in Older's device and, in fact, the manner in which it functioned even prior to his device.

Appellees take the position, and not without merit, that the only device described in the claims in suit is that of a seal; and that they cannot be construed so broadly as to include a form to be used in the pouring of the concrete. Appellees state: "We therefore stand squarely upon the proposition, first that the issues of the present case must be determined solely by the consideration of the sealing functions performed by the compared devices; and second that it is improper, in considering the prior art, to include in the comparison any alleged features or functions of the Older device considered as a 'barrier' in connection with operations which are antecedent to its performance of the sealing functions in the manner defined in the specification." We construe this statement to mean that if the patent in suit, in addition to its sealing function, includes a de-

vice for the protection of the air space during the pouring of the concrete, the defense of noninfringement is very seriously impaired and the cited prior art has little, if any, bearing.

We are unable to agree with appellees in their contention that the patentee has described nothing more than a seal, and that failure to expressly mention the utility of the device as a pouring form, or how it is to be used in that capacity, necessarily negatives such construction. The law seems to be well settled that the court may look at the specification and drawings to determine the characteristics and meaning of the elements recited in the claim. Horton Mfg. Co. v. White Lily Mfg. Co. (C.C.A.) 213 F. 471; Topliff v. Topliff, 145 U.S. 156, 171, 12 S.Ct. 825, 36 L.Ed. 658; Winget Kickernick Co. et al. v. Kenilworth Mfg. Co. (C.C.A.) 11 F.2d 1. While the claims are not as certain in describing the device and its purpose as they might be, yet, when we consider their language in connection with the specification and drawings, can any person reasonably conclude that the patentee, who had had many years of experience in the construction of highways, was so inefficient and lacking in knowledge on the subject matter of his invention as to merely intend to describe a seal for the purpose of covering and protecting the space between two slabs of concrete without making provision for the formation of that space? We realize that the intention of a patentee is not controlling unless he reduces that intention to writing, but we think the claims in suit, together with the specification and drawings, can reasonably be interpreted to include, not only a seal, but the means and methods by which the space is to be formed which the seal is designed to protect. In claim 6, for instance, there is described an expansion joint for concrete roads, a pair of side walls to engage the ends of adjoining concrete sections, a seal at the top of said walls, and provision for the anchorage of said walls to their respective concrete sections, and reinforcing means extending through said walls for preventing injurious vertical movement between said walls. It must be remembered that this claim and others in suit are describing a "metallic expansion joint for concrete roads," and not merely a seal for the purpose of protecting the joint. The joint is illustrated and described as installed between slabs of concrete. It is true, as suggested by appellees, there is nothing in the claims or specification which expressly require this joint to be put in place before the concrete is poured, but the suggestion made that the concrete might first be poured and the joint afterwards installed is, in our opinion, wholly without merit. To conclude otherwise is to ignore the statutory provision that a patent is addressed to those skilled in the art. As was said by the Supreme Court in Mowry v. Whitney, 14 Wall. (81 U.S.) 620, 629, on page 644, 20 L.Ed. 860: "The specification, then, is to be addressed to those skilled in the art, and is to be comprehensible by them. It may be sufficient, though the unskilled may not be able to gather from it how to use the invention. And it is evident that the definiteness of a specification must vary with the nature of its subject. Addressed as it is to those skilled in the art, it may leave something to their skill in applying the invention, but it should not mislead them."

Again the Supreme Court in The Telephone Cases, 126 U.S. 1, on page 536, 8 S.Ct. 778, 783, 31 L.Ed. 863, wherein was involved the Bell patent on telephones, said: "The law does not require that a discoverer or inventor, in order to get a patent for a process, must have succeeded in bringing his art to the highest degree of perfection; it is enough if he describes his method with sufficient clearness and precision to enable those skilled in the matter to understand what the process is, and if he points out some practicable way of putting it into operation. This Bell did."

Undoubtedly, the essential characteristic of the specification, in addition to the seal, is the air space provided between the adjacent slabs of concrete. It seems to us that a person even slightly skilled in the construction of concrete highways would, without any difficulty, know that the described devise was for the purpose, not only of providing a seal for the protection of the air space at the top, but of walls for its protection at the sides. It was provided that these side walls should be firmly anchored to the ends of the adjacent slabs and a person of limited knowledge would recognize that this air space was to be created at the time the concrete was poured rather than at some subsequent time when the concrete had become hardened and when it would be impractical, if not impossible, to accomplish the clearly described purpose of the inventor. It is

also urged there is no provision for keeping these side walls in place against the pressure resulting from the pouring operations other than the support afforded by the corrugated metal comprising the sealing device. It is said that inasmuch as this metal, provided for the sealing function at the top, must be of a pliable nature, its function in this respect is antagonistic to the function which it would be required to serve as a support to the side walls during the pouring operation. This alleged defect might be material to one unfamiliar with such work, but again we say, in the hands of a trained workman, it would have very little importance. To one so trained, it surely would require no great amount of ingenuity to know, if the metal comprising the sealer at the top did not afford sufficient support, that other means would have to be provided. In fact, this has been done both in appellant's and appellees' commercial device and in each instance, as we understand, side wall supports have been provided of a temporary nature and so as not to interfere with the proper expansion and contraction after they have served their purpose.

It is therefore our conclusion that the patent in suit provided a device which can be prefabricated and placed in position upon the highway subgrade before the concrete slabs are formed. It is a single unit extending from one edge of the highway subgrade to the other edge of that subgrade. We go further and say it was designed to function in this manner and no other. To conclude otherwise is to close our eyes to the realities of the situation and to impute to Older a degree of ignorance far greater than the circumstances will permit. As was said in Diamond Rubber Co. v. Consolidated Rubber Co., 220 U.S. 428, on page 436, 31 S.Ct. 444, 448, 55 L. Ed. 527: "It is difficult to suppose that the contriver of a successful device did not understand how it operated; that he saw nothing in it, and committed it to the world without seeing anything in it but a composition of wood, rubber, and iron in certain relations, without understanding or attempting to discover the law and principle of its organization and efficiency. Grant's situation demanded caution and knowledge. He was confronted by what has been termed a 'crowded' prior art; he might expect to encounter litigation, and, even before litigation, he would have to satisfy the Patent Office of the novelty and utility of his device, and it is hard to believe that he did not know the co-operating law of the elements which he had combined, and only unconsciously made use of it. We find the contention difficult to handle. When a person produces a useful instrument, to say that he did not know what he was about is at least confusing. To take from him the advantage of it upon nice speculation as to whether it was an ignorant guess or confident knowledge and adaptation, might do him great injustice. His success is his title to consideration."

■ The alleged infringing device as is shown in a book published by American Concrete Expansion Joint Company, one of the appellees, is entitled a metal expansion joint consisting of two parts, a seal and a stool which shall be assembled as a unit to make up a complete joint. The seal is referred to as having inclined sides extending outwardly as webs or anchors to become embedded in the concrete slab. The inclined sides of the seal are referred to as inclined wall sections. The stool supporting the seal is described as having two parallel wall sections, the portions of which are adjacent to the walls of the seal to correspond with the incline of the latter. Thus, the wall section of the seal in connection with the wall seal of the stool is at least the equivalent of the side wall or side plate as described in the Older device. Appellees, however, seek to differentiate their structure on the grounds that the lower portion of its side wall or that part of the side wall which comprises the stool becomes obsolete after the slab is formed, while the entire side wall in the Older device must continue to function. To our mind this distinction is not sufficient to enable appellees to escape the charge of infringement. As was said by the court in Kohler v. Cline Electric Mfg. Co. (D.C.) 28 F.2d 405, on page 406: "Accepting for the moment the evidence of defendants' experts, we have a case of a mechanism which can be operated in a way pointed out by the inventor to produce a given result. Defendants discover that, by operating the mechanism in a different way, precisely the same result may be achieved. Certainly defendants may not escape the charge of infringement by operating the mechanism differently from the way pointed out by the inventor, and obtaining a result identical with that obtained through the other method of operation."

■ To the same effect is Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, on

page 42, 50 S.Ct. 9, 13, 74 L.Ed. 147, where the court said: "Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape, Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935. And see Elizabeth v. Pavement Co., 97 U.S. 126, 137, 24 L.Ed. 1000. That mere . colorable departures from the patented device do not avoid infringement, see McCormick v. Talcott, 20 How. 402, 405, 15 L.Ed. 930. A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement."

It seems to us the language just quoted is pertinent to the situation here presented.

It is true no commercial structure was manufactured under the Older patent until some five years after its issuance and when placed upon the market had a number of improved features, not expressly required by the Older specification. This same situation is true as applied to appellees' commercial devices. The improvements, however, in each instance, were merely the result of applying such knowledge and training, as might be expected of those familiar with such problems, to the structure described and claimed in the Older patent. In Farrington v. Haywood (C.C.A.) 35 F.2d 628, on page 631, it is said: "Doubtless the defendant's stirrer has some functions not possessed by the plaintiff's, and it may be under some conditions an improvement thereon, but this fact also does not avoid infringement. Gordon Form Lathe Co. v. Walcott Machine Co. (C.C.A.) 32 F.2d 55."

In Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, on page 328, 48 S. Ct. 170, 173, 72 L.Ed. 298, it is said: "It is well established that an improver cannot appropriate the basic patent of another, and that the improver without a license is an infringer, and may be sued as such. Cochrane v. Deener, 94 U.S. 780, 787, 24 L.Ed. 139; Cantrell v. Wallick, 117 U.S. 689, 694, 6 S.Ct. 970, 29 L.Ed. 1017; Yancey v. Enright (C.C.A.) 230 F. 641, 647; Reed v. Hughes Tool Company (C.C.A.) 261 F. 192, 194."

We therefore reach the conclusion that, while appellees' devices have been improved over that described by Older, they perform substantially the same function and obtain the same, or at any rate, an equivalent result. It follows from this that we find that each of the claims in suit are infringed by appellees.

So far we have assumed the validity of the patent in suit, but this is disputed by appellees. It is charged that all of the essential features of the Older device are anticipated by the prior art, and numerous former patents and publications are shown in support of such contention. Since we have heretofore discussed and found the Older patent to include among its features and functions side walls which are to serve as barriers in the pouring of the concrete, our problem with reference to the charge of anticipation is to a considerable extent simplified. This is so, as we understand, for the reason that all of the prior art for which any serious claim is made of anticipation has reference to seals, rather than joints such as Older provided, which were to function, not only as seals, but as a means of creating and preserving an air space between the adjacent slabs of concrete. No useful purpose would be served in undertaking to analyze and compare all the various patents and publications before us, as bearing upon the question of anticipation. It is sufficient that we have examined them and find nothing which comes close to sustaining such charge. They generally refer to various types of seals designed for use in places other than joints for highway construction. In such cited instances as the seal was intended to or might function as a seal for such joints, no way was suggested or provided for the formation of a space between such joints, and without such provision the seal could serve no useful function. To Older must go the credit for devising a highway expansion joint which could be placed in position prior to the time the concrete was poured, in a manner and by means that the joint, with its air space between the adjacent slabs, provided for the expansion and contraction of the concrete, with a seal at the top to protect such space from outside materials. It was he who blazed the trail in this important and highly essential improvement in highway construction. We conclude the claims in suit are valid.

The decree is reversed and the cause is remanded, with instructions to reinstate the bill and for such further proceedings as are not inconsistent with this opinion.