## WEAVER MFG. CO. et al. v. BEAR MFG. CO.

### No. 6937.

Circuit Court of Appeals, Seventh Circuit.
Jan. 12, 1940.

Wm. M. Walker, of Rock Island, Ill., and Oscar A. Mellin, of Oakland, Cal., for appellant.

Walter M. Fuller, of Chicago, Ill., for appellees.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

Appellees charged appellant with infringement of United States Patent to Boyer, No. 1,611,099, of which the appellee company is the exclusive licensee. It relates to means for testing the action of brakes upon vehicle wheels and was issued December 14, 1926, on an application filed September 7, 1923. The defenses were invalidity and non-infringement and the court found the patent valid and infringed. Claims 1, 2 and 4 were in issue. [1]

1. A testing device for brakes used on automobile wheels and the like, comprising a support, two parallel members mounted on said support and longitudinally and independently movable with respect thereto, and means for indicating the movement of each member relatively of said support, when the brakes are applied while said wheels are moving over said members, said means comprising a compression cylinder for each member, and having its piston rigidly connected to said member whereby movement of the latter will move the piston longitudinally in said cylinder, and an indicating gage carried by each cylinder and adapted for

The specification suggests the importance of equalizing the braking effect on opposite wheels of a vehicle as generally recognized in the automobile industry. It is further suggested therein that at that time such equalization was accomplished by means of manual adjustment.

The primary object of this patent is the provision of means whereby the difference in the retarding effect of the brakes on the opposite wheels may be automatically indicated, thereby apprising the operator of the exact adjustment necessary. Its further object is to provide means for indicating the braking effect on each wheel by the simple expedient of merely applying both brakes. The device, in effect, is a dynamometer, adapted to measure the degree of braking power applied to each of the wheels of an automobile.

The device, as illustrated, is located in a cavity in the floor but it may be positioned upon the floor with ramps leading thereto. At the base of the cavity, as illustrated, is a rigid foundation, preferably provided with a metallic covering adapted as a track for a plurality of flanged rollers. Mounted upon the rollers is a carrier member, or sill, carrying a roller track upon its lower surface and secured by bolts, or otherwise, to a concrete top member, which is provided with a trough-shaped track on its top surface. The foundation, and the members supported thereby, are spaced from the adjacent faces of the floor to permit of sufficient longitudinal movement of the sill and concrete top member.

The device preferably includes a compression cylinder in operative engagement with each of the sills. The cylinders are positioned in a cavity in the floor, and in a plane parallel with the plane of the sills, but the cylinders may be located in any position adapted for operative connection to the sills.

Each cylinder is equipped with a piston, having a rod extending through the cylinder head and rigidly secured to the sills. Extending into the opposite end of the cylinder is a tube, leading to a gauge, adapted to register on its face the degree of air compression in the cylinder.

The automobile—whose brakes are to be subjected to test—is run upon the trough-shaped tracks, and while in motion, and while the braking wheels are in contact therewith, the brakes are simultaneously applied to each wheel by the foot pedal or the emergency lever. When the wheels contact the concrete top member and the brakes are applied, the concrete top members, under the forward thrust of the wheels, will at once initiate a forward movement over the rollers, which will cause the piston rod attached to each sill to push its piston forward in its cylinder, thereby compressing the air therein and communicating such pressure to the gauge, which in turn causes the dial to indicate the degree of air pressure in its associated cylinder.

If one dial indicates a pressure greater than the other, it follows that there has been a greater forward movement of that concrete top member which is connected to the cylinder associated with the dial indicating the greater pressure. Such excess movement of one of such members over the other indicates that that wheel producing such excess movement is developing a greater braking force, thereby registering the difference upon the dials on the gauges, as well as the degree of manual adjustment necessary to equalize the brakes

The device covered by this patent has become known and is referred to as a

actuation by the compressed air in the cylinder.

2. A testing device for brakes used on automobile wheels and the like, comprising a support, two parallel members mounted on said support and longitudinally and independently movable with respect thereto, anti-friction devices positioned between said members and said support, and means for indicating the movement of each member relatively of said support when the brakes are applied while said wheels are moving over said members, said means comprising a compression cylinder for each member, and having its piston rigidly connected to said member whereby movement of the latter will move the piston longitudinally in said cylinder, and an indicating gage carried by each cylinder and adapted for actuation by the compressed air in the cylinder.

4. A testing device for brakes used on automobile wheels and the like, comprising, in combination with a support, two parallel members adapted to receive the wheels of an automobile, each member being independently movable relatively of said support, and a gage operatively connected to each member and adapted to register the degree of movement of its associated member when the brakes are applied to the wheels while the latter are moving along said members.

"Drive-On-And-Stop" brake-test. As bearing on the question of invalidity, appellant relies on the following prior art patents: Brennan, No. 1,264,770; Bishop, No. 1,-452,783; Cowdrey, No. 1,481,123; Isenberg, No. 1,464,763; and Sellers, No. 864,-927. It further relies on United States Patent to Donovan, issued December 15, 1925, on an application filed February 19, 1925. However, Boyer's application antedated Donovan's and for that reason it cannot be considered prior art with respect to the patent in suit.

The other patents cited were considered by the examiner in his study of this case. He found nothing anticipatory of the claims here involved. A study of these patents convinces us that his conclusions in this respect were sound and that the patent was properly issued to Boyer.

▮▮▮ On December 15, 1925, a patent was issued to Ira A. Weaver on a brake-testing appliance. This application was filed May 16, 1925, and was assigned by the applicant to appellee, Weaver Manufacturing Company. It is claimed by appellant that if it is guilty of any infringement, it is with respect to the Weaver patent and not that of Boyer. We think this contention is without merit. The Weaver Company became the owner of the Weaver patent and it also was the exclusive licensee under the Boyer patent. It is true that the Weaver device covers the disclosures of the Boyer patent and it also covers the other disclosures of the Weaver patent. It is obvious that the device manufactured under the Weaver patent would infringe the Boyer patent and that is no doubt the reason why the ownership and control of these two patents were secured by the appellee company. There seems to be no doubt that a patent may issue for improvements on an existing patented device. Such subsequent patents, however, would not in any way relieve such patentee from liability for infringement of the prior patent if used as an element in the later patent. This is the situation which confronts us, and if appellant has infringed Boyer's disclosure the suit may be maintained by both Boyer and his licensee.

At the time this case was tried before the District Court, appellant's application for a patent on the accused device was pending. We are informed by counsel in argument that, since the decision of the District Court, a patent thereon has been granted and issued. It is not before us and we have no information as to the substance of the claims. The accused device, however, has been fully described and it is obvious that it contains the "Drive-On-And-Stop" elements as disclosed by the Boyer patent. It contains many other elements which are no doubt improvements and constitute means for disclosing other defects in the brakes, such as whether the brakes are slipping or greasy, whether the brake linings are glazed, whether there is a leak in the hydraulic brake system, whether the brakes are dragging, and whether the brake drums are out of round. With these tests we are not concerned for they are additional improvements which Boyer does not disclose. We are only concerned with the "Drive-On-And-Stop" test which is covered by the Boyer patent. It is true that appellant discloses a further test for determining the relative percentage of the total retarding effect of the brakes, which it claims is more accurate than the "Drive-On-And-Stop" method. With this we are not concerned. The fact remains, however, that appellant advertises and uses the "Drive-On-And-Stop" method just as it is used under the Boyer patent.

There is one point of differentiation, however, which appellant relies on as a complete defense to the charge of infringement, and it requires the following explanation. Originally Boyer's application contained eight claims. All of these claims were finally rejected in view of the prior art heretofore referred to. These claims disclosed a cylinder piston connected to a concrete top member, or moving platform. The examiner suggested that this connection should be rigid, and in compliance with that suggestion Boyer inserted the word "rigidly" before the word "connected" in each claim where this connection was referred to. Other suggestions were made by the examiner and voluntarily complied with. Eventually Boyer cancelled all of his claims and filed three new ones. These claims referred to the rigid connection of the piston rod with the platform. Subsequently, Boyer filed the fourth claim which it will be noted does not specifically describe this connection but refers to the platform as being operatively connected to the gauge. The examiner objected to this claim because of its failure to describe the means of connection. This objection was successfully answered by Boyer by stating that it was unnecessary to repeat the means which were fully set forth in the specifica-

tions and the other claims. It is claimed by appellant that Boyer, by cancelling the former claims and relying upon the later claims, thereby limited his disclosures to a rigid connection of the piston rod to the platform. For the purpose of this discussion we grant this to be true, although it would not be fair to say that this was the only objection to the original claims or that this was the only difference between the original and the subsequent claims.

The parties hereto by stipulation have unintentionally made this record very difficult to handle, and we suggest that hereafter any stipulation with respect to the limitation of the printing of the record shall be approved by some member of this court. From the limited printed record and the many printable but unprinted exhibits, we gather that appellant seeks to differentiate his connection of the piston rod to the platform by the fact that he, in effect, has severed the piston rod outside the cylinder and placed a flat head on the end which protrudes from the cylinder. A similar head is connected with the end of the moving platform in such position that it will contact with and cannot miss the head on the piston rod when the platform is thrust forward by the braking of the wheels on the automobile. The result is precisely the same as that secured by Boyer with the piston rod rigidly connected to the platform. It is therefore contended by appellant that in its device there is not a rigid connection between the piston rod and the platform and for that reason appellant claims that it has not infringed.

The word "rigid" has a variety of meanings, which in our opinion would not support appellant's contention. However, we assume that the word "rigid" means stiff and inflexible, but we think that a rigid connection does not necessarily mean a fastening together. There may be a rigid connection by a mere contact. Appellant is quite right in stating that in its device there is no connection at all when the tester is not in use. However, when the contact is made between these headers by the thrust caused by the locked wheels of the automobile, for all practical purposes the connection is just as rigid as if the two headers were welded together. It is quite true that appellant has a different method of restoring the platform to its original position after the test has been made, but with that we are not concerned and it is not necessary to describe it here. The fact remains that the very heart of Boyer's patent is used by appellant in registering the test and we think that appellant's connection between his platform and the cylinder piston is in every respect the equivalent of that which Boyer uses.

The decree of the District Court is affirmed.