## LESTER v. AMERICAN ROLLING MILL CO.
### No. 7565.

Circuit Court of Appeals, Sixth Circuit.
April 7, 1938.

Walter F. Murray, of Cincinnati, Ohio, for appellant.

Marston Allen, of Cincinnati, Ohio (and Allen & Allen, of Cincinnati, Ohio, on the brief), for appellee.

Before SIMONS and ALLEN, Circuit Judges, and DRUFFEL, District Judge.

SIMONS, Circuit Judge.

The bill in the present patent infringement suit was dismissed on the ground that alleged infringement had been discontinued many years before the action was brought, and there being no reason to apprehend its resumption, the case was not one for invoking the equity jurisdiction of the court.

The patent in suit is to Lester, No. 1,389,059, granted August 30, 1921, upon an application filed May 8, 1920. As originally issued it was for an air-preheating mechanism for mill furnaces. Approximately thirteen years after issue, the patentee, on March 30, 1934, disclaimed from the scope of his claims all metal heating furnaces except sheet mill furnaces. The defendant, in addition to denying infringement, challenged the validity of the patent because of anticipation, lack of invention, and inutility, and the disclaimer on the ground of laches and the incorporation into the patent thereby of an element not included in the original claims.

Lester was a mill operator of some thirty-five years' experience in many capacities in connection with the rolling of heat-treated steel. He had observed imperfections in current product due, he thought, to uneven heat in the furnaces caused by cold air drafts passing the burning fuel. His concept of a remedy was to feed preheated air by forced draft to the furnace, utilizing for his heating medium the hot gases escaping through the smokestack.

His invention as described in the specification consisted of an oven or preheating device so mounted upon or spaced in relation to a furnace that the gases would heat the intake air. He describes it as a device of a type similar to a muffle heater, comprising a series of forced air draft ducts arranged in horizontal and vertical alignment, and a series of gas ducts' arranged in similar alignment at right angles to the air ducts; the horizontal series of draft and gas ducts being alternately "interposed between one another." The preheated air is to be fed to the furnace in the manner employed in feeding cold air thereto. The benefits to be derived are said to be a more evenly heated furnace, fuel economy, and the avoidance of oxidization of the material to insure a softer metal to be worked upon.

Lester was allowed three claims, the first two of which are in suit. They are printed in the margin.[1] They must, of course, be read in the light of the specifications and drawings to ascertain what means are made elements of the claims and to avoid infirmity as functional. Hollingshead Co. v. Bassick Mfg. Co., 6 Cir., 73 F.2d 543; Tyden v. Ohio Co., 6 Cir., 152 F. 183; Davis Sewing Machine Co., v. New Departure Mfg. Co., 6 Cir., 217 F. 775, 782. So read it seems clear that Lester contemplated a preheater capable of bringing the cold air to a temperature sufficiently high to avoid the evil sought to be remedied within the furnace, which is operated at a temperature of from 1,400 to 2,000 degrees F., and it is equally clear that a single large air conduit would not function successfully. What the desirable temperature of the preheated air should be is left to speculation.

Air preheaters were old in steel mills. Whether Lester made an inventive contribution to the art, whether there is invention in applying a preheater from one kind of furnace to another, whether the utility of Lester's combination is demonstrated in the absence of commercial history, or recognition by the industry, whether the disclaimer saves the patent, and whether the inventive concept resides rather in a method than in means seemingly obvious once the method is conceived, we have no occasion to decide in view of the paucity of evidence bearing on infringement.

In 1929 the defendant installed a series of furnaces in its sheet mill department to heat "rough plates." They had air preheaters installed upon them. Whether they were the heaters of the patent is unimportant, for they were found wanting and were discontinued within a few months. This was approximately five years before the filing of the bill. The record is conclusive that air preheating was intended to be abandoned, that the defendant had found it wasteful and inefficient and had no intention to resume its practice. Nor is this contention disputed. The claim of infringement rests upon a single installation, to be described.

When the defendant abandoned its air preheaters in 1929, it cut out entirely the multiple pipes used for passing the draft air to the furnace through its exhaust gases and installed entirely new pipes. In the case of a single furnace, however, referred to as "9–W" in the record, due to some exigency which made shutting down for a substantial period undesirable, the new single air line was led to the furnace burner through the path formerly occupied by the preheating radiator. The air passing through this line was somewhat raised in temperature by the heat of the hood, beneath which it passed. The inventor denominates it a recuperator. The record, however, shows that the preheating resulting from the location of this air line raised the air temperature approximately twenty-three degrees F. above room temperature. The preheating devices which had been abandoned raised the temperature in the air lines between 400 and 500 degrees F. This rise in temperature of the air passing through a single large pipe is said to be within the range of the claims in suit. The inventor depreciates his patent. If such inconsequential heating could accomplish the beneficial results claimed by the patentee, it is difficult to sense invention in his concept, whether one of method or machine. Without, however, passing upon validity, we think there has been complete failure of proof to demonstrate infringement.

The earlier acts of alleged infringement having long been abandoned, the court having found no reason for expecting their resumption, it was not error upon the authority of Kennicott Water Softener Co. v. Bain, 7 Cir., 185 F. 520; Munger Laundry Co. v. National Marking Machine Co., 8 Cir., 252 F. 144, to dismiss the bill.

The decree below is affirmed.

---

1 1. The combination with a metal heating furnace, of means adapted to create a forced air draft, means adapted to subject the forced air draft to the heat of the exhaust gases, and means to convey the forced air draft, after it is heated, to the furnace fires.

2. The combination with a metal heating furnace, of an oven, means adapted to create a forced air draft and to force such draft through the oven, means to carry the exhaust gases through the oven on their way to the smokestack, and means to convey the forced air draft from the oven to the furnace fires.