## HAMILTON STANDARD PROPELLER CO. v. FAY–EGAN MFG. CO. et al.

### No. 7957.

Circuit Court of Appeals, Sixth Circuit.

Feb. 13, 1939.

Drury W. Cooper, Jr., of New York City (Drury W. Cooper and C. Blake Townsend, both of New York City, and Dinsmore, Shohl, Sawyer & Dinsmore, of Cincinnati, Ohio, on the brief), for appellant.

D. D. Woodmansee and William R. Collins, both of Cincinnati, Ohio, for appellees.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

This is a suit in equity seeking injunction and accounting for infringement of three patents relating to aircraft propellers and their hubs. The patents and claims in suit are Claims 2, 3, and 10 of No. 1,608,-755, issued to McCauley and Caldwell on November 30, 1926, Claims 10, 11, 30, and 31 of No. 1,693,450, issued to McCauley on November 27, 1928, and Claims 1, 2, 3, 5, 6, 7, 8, and 9 of No. 1,769,775, issued to Dicks on July 1, 1930. Claims arising out of a fourth patent and other claims of the patents in suit were voluntarily dismissed at the trial. Subsequent to the filing of the petition, appellant assigned all rights to the patents in suit to the United Aircraft Corporation, which by supplemental pleading was substituted as plaintiff and appellant. Ownership of the patents as alleged in the petition is stipulated.

The defenses pleaded were that the patents were void for want of invention, lacked patentable novelty, were anticipated by prior public use, and that the devices they disclose are the result of mere mechanical skill not amounting to invention.

The J. A. Fay & Egan Company, appellee, is a West Virginia corporation, and the Fay-Egan Manufacturing Company, appellee, an Ohio corporation, is its subsidiary.

The District Court dismissed the bill as against the J. A. Fay & Egan Company for want of evidence that it ever made any propeller blades or hubs. As to the Fay-Egan Manufacturing Company, the court dismissed the bill with reference to the first two patents (Nos. 1,608,755, and 1,693,450) for want of equity on the grounds that no present infringement existed and none was threatened, and that injunction was not the appropriate remedy. The court declared that it was unnecessary to determine the validity or infringement of these patents. It also dismissed the action as to the Dicks patent, holding it invalid for want of patentable novelty and anticipated by Leitner patents Nos. 1,414,742, and 1,438,838.

The problem which the patents in suit attempted to solve was that of constructing aircraft propellers in such a way that the blades could be adjusted as to pitch and at the same time achieve the desired strength, lightness, and resiliency. For convenience the propeller blades were made separately and assembled in a hub split in half longitudinally with suitable means for fastening the hub on the propeller crankshaft which supplies the rotary motive power. The blades are of duralumin, but this feature is not seriously involved in the case. The split hub when assembled comprises sockets of suitable shape and size which interfit with the shank of the blades, having protrusions, ridges, or grooves thereon to prevent endwise motion of the blades. The blades are held in position by clamps or collars around the end of the hub surrounding the shank end of the blade. The clamps are adjustable and serve also as balancing elements.

The McCauley-Caldwell patent, No. 1,608,755, and the McCauley patent, No. 1,693,450, deal with the propeller, including the hub mounting.

The evidence conclusively shows that neither appellee manufactured the hubs at any time. The parent corporation has no machinery which would enable it to manufacture either blades or hubs. The subsidiary corporation manufactures the blades, and it purchased eleven or twelve hubs from the Steel Metal Products Company of Springfield, Ohio, for use in combination with its blades, and sold them abroad. It has five hubs on hand, on con-

signment. Whatever infringement there was as to these two patents consisted in the sale of the hubs, the last of which was made more than three years before the bill was filed. As neither appellee makes the hubs and there is no evidence of threat of manufacture or sale of hubs in the present or future, there is no necessity for equitable relief by injunction with reference to the McCauley-Caldwell and McCauley patents. Injunction is not appropriate for past infringement and the court was correct in dismissing the bill as to these two patents. Lester v. American Rolling Mill Co., 6 Cir., 95 F.2d 772; Kennicott Water Softener Co. v. Bain, 7 Cir., 185 F. 520; Munger Laundry Co. v. National Marking Mach. Co., 8 Cir., 252 F. 144.

The Dicks patent (No. 1,769,775) deals with the whole propeller assembly but has several claims covering the blade alone. Claims 3, 6, and 9 are typical.[1] Appellees have made several thousand blades for the United States Government which is a licensee under the patents in suit, and these blades are not involved. It is not denied that the 244 blades manufactured by appellee The Fay-Egan Manufacturing Co. for commercial use are infringements of the Dicks patent. The Dicks patent provides for interchangeable, adjustable propeller blades to fit in sockets formed by the split hub. The shank end of the blade is enlarged and has annular nonangular shoulders to fit corresponding indentations in the hub sleeve. The shank is tapered toward the shoulders, and the hub is cylindrical so that there is no tight fit of the hub between the outer end of the shank and the bottom part of the hub socket. This space gives a desirable resiliency to the blade by allowing it to absorb vibratory stresses resulting from variable air currents, an advantage not possible with the rigid grip of the hub on the shank of the blade in other propellers where both the shank and the hub are in general cylindrical and fit tightly together throughout the length of the shank. The annular shoulders also result in a stronger construction and give greater life to the blade by avoiding the concentration of stresses present in the sharp angular shoulders in prior propellers. Dicks' hub has the halves thereof in spaced relationship at the outer ends so that the walls of the hub socket can be more tightly drawn by the collar or clamp against the cylindrical portion of the shank at the outer end thereof. The vertical balance of the blade is preserved by shifting the clamps to a different position when a change in pitch is made. The clamps also serve as counterbalances in the rotary motion of the propeller. The pitch of the propeller may be changed by merely loosening the clamps and turning the blade in the socket, which is an advantage over prior propellers in that those employed serrations in the base of the shank to prevent the blade from turning in its socket, or a transverse bolt in an elongated slot. Where the serrations were employed the hub had to be almost entirely dismantled to change the pitch, and the transverse bolt construction is in its very nature weak.

The District Court was correct in holding the Dicks patent invalid. The split

---

[1] Claim 3. "An aeronautical propeller assembly comprising a blade having a substantially cylindrical shank, an inner circular terminal head on said shank, the head being of materially greater diameter than the shank and comprising a plurality of annular shoulders with non-angular transition portions therebetween, a hub construction comprising complementary semi-circular sleeve members adapted to fit over the head and shank of the blade, the sleeve members having inwardly projecting ribs adapted to engage the shoulders of the blade head to prevent withdrawal thereof, and a compression ring around the hub sections adapted to clamp them on the blade."

Claim 6. "A blade for aeronautical propellers having a shank comprising a cylindrical portion, a reduced tapered circular portion, and an enlarged terminal head portion, said head having an annular non-angular groove therein, whereby to provide outwardly facing annular abutments on the head for engagement by a hub sleeve."

Claim 9. "A blade for aeronautical propellers comprising a circular shank terminating in a cylindrical head portion adapted to fit into a cooperating hub sleeve, the shank having a deep annular non-angular groove adjacent said cylindrical portion, an annular shoulder adjacent said groove formed by said groove on the inner side and a tapered reduced portion beyond the said shoulder, and a split hub having socket portions adapted to fit around said blade ends and having internal annular ribs adapted to engage the outer faces of the said abutments on the blade and the cylindrical portion thereof, and means to clamp the outer ends of the sockets to the blade shank."

hub was old. Detachable blades and blades which could be adjusted for pitch were old. The testimony shows that the teachings in Leitner patents, No. 1,414,742, issued May 2, 1922, and No. 1,438,838, issued December 12, 1922, were used as the basis for developing the Dicks patent. With regard to the claims of Dicks relating to the blade alone (Nos. 5, 6, 8, and 9), Leitner in his specifications and claims provides for an annular shoulder at the base of the shank to prevent radial movement of the blades relative to the hub, in the same manner as Dicks. The addition of another shoulder in Dicks does not rise to the dignity of invention. Leitner also specifies that the shank "may be tapered in either direction." Appellant contends that Dicks' tapered shank is a great advantage, but neither Leitner nor Dicks states the purpose of the tapering.

With regard to the hub, Leitner provides for a split hub and clamps around the outer end of the hub for the purpose of gripping the shank of the blade, as does Dicks. Leitner's hub halves are not in spaced relationship at the end, as are Dicks', but it is obvious to one skilled in the art that such a means could be used to permit a tighter grip on the blade shank by the surrounding collar.

Leitner, by the use of serrations on the shank end, prevents the blade when adjusted from turning in its socket, while Dicks accomplishes this result by clamps or collars on the hub end. Both, however, provide for clamps or collars, as do also the other two patents in suit. The use of the collars as weight elements for balancing purposes is not mentioned in any of the patents, although the evidence indicates they were so used. Thus there is no essential difference between Leitner and Dicks except in the means for locking the blade so that it will not turn in its socket. While in Dicks' device it may be somewhat easier to adjust the pitch of the blade, this difference is the result of the locking means and Leitner anticipates in this regard by the use of the clamp. The tighter grip of Dicks' clamp would render unnecessary the use of the serrations in the base of Leitner's blade. As the means of securing the tighter grip on the blade is not invention, it follows that the absence of serrations in the base of the shank is not invention. The patentee did not display any flash of genius, inspiration or imagination not within the reach of mere artisanship. Vulcan

Corporation v. Slipper City Wood Heel Co., 6 Cir., 89 F.2d 109, 110. The claims in suit of the Dicks patent present no patentable novelty, and are void for want of invention.

The decree is affirmed.