### E. H. BARDES RANGE & FOUNDRY CO. v. AMERICAN ENGINEERING CO.
#### No. 8086.

Circuit Court of Appeals, Sixth Circuit.
Feb. 16, 1940.

Walter F. Murray, of Cincinnati, Ohio (Murray, Sackhoff & Paddack and Walter F. Murray, all of Cincinnati, Ohio, on the brief), for appellant.

Charles H. Howson, of Philadelphia, Pa. (Wood & Wood, of Cincinnati, Ohio, and Chas. H. Howson and Carl F. Sibbe, both of Philadelphia, Pa., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The patent involved in the present infringement suit is Hughes No. 1,930,897, issued October 17, 1933, upon an application filed April 13, 1928, for a tuyère. The District Court held it valid and infringed, enjoined future infringement and ordered an accounting. Appeal followed.

Tuyères are employed in underfeed stokers for feeding coal and directing air into the fuel bed of the furnace to aid combustion, and are made up of a number of flat blocks placed one above another and of rows in stepped relation inclining downwardly from front to rear of the furnace. Individual tuyère blocks are flat plates, the upper or fuel supporting surface of which is relatively smooth while the under surface is provided with ribs defining a series of passages through which draft air from a pressure chamber passes into the fuel bed, distributing the air uniformly around the entire discharge end of the blocks to secure proper combustion.

Since in underfeed stoker furnaces the burning takes place at the top of the fuel bed, the ashes therefrom lie in its hottest zone, and inasmuch as the fusing temperature of the ash is lower than that of the burning zone of the fuel bed, fusion takes place and the fused ash trickles through onto the tuyère blocks. Upon reaching the relatively cool surfaces of the blocks, the molten ash solidifies and forms a curtain over the discharge ends of the air passages, as a result of which the block is deprived of the cooling effect of draft air and the clogging of such passages creates hot spots which leads to rapid deterioration of the blocks.

Hughes, recognizing this difficulty in underfeed furnaces of the prior art, concluded that it resided in the fact that the ribs defining the air channels terminated at the toe of the tuyère block, and undertook to eliminate it by providing a transverse air channel or passage at that end. This was accomplished by terminating the ribs inwardly or rearwardly of the edge of the toe portion. With this construction the toe portion of the plate projected beyond the outer ends of the air passages protecting them from being closed by the melting ash and insuring a maximum life for the tuyère block. Thus, by providing a channel around the discharge end of the air passages, he protected them against being closed by slag that formed at the discharge end, and should such slag formations occur, the air may still flow through all the passages defined by the ribs and into the fuel bed through this peripheral channel, sufficiently preserving the cooling effect of the draft air upon the block. His invention seems to have solved the difficulty and it has met with substantial commercial success.

Hughes was allowed six claims, all of them in suit. Claims 1 to 5 inclusive cover tuyère blocks and claim 6 is directed to a tuyère made up of the blocks. For the purpose of this discussion we consider claim No. 5 typical. It reads: "A tuyère block, comprising a substantially flat fuel supporting portion, having on its nether side depending means defining air channels, said means terminating inwardly of the edge of said fuel supporting portion, and the ends of said means and the projecting edge of said fuel supporting portion forming in effect a channel which communicates with said first mentioned air channels."

While the bill below and the assignments of error here challenge the validity of the patent, the appellant produced no evidence of anticipation and recorded art was presented to the court primarily for the purpose of narrowing the claims in effort to escape infringement. In the present review invalidity is not stressed, and in view of the assertion of the defendant that after it had notice of the patent it had informed the appellee that it would cease to make the Hughes type of block, and had instructed its pattern shop to return to a block old in the art, and in view also of its contention that certain replacement blocks charged to infringe were inadvertently manufactured and sold after notice, it is fair inference that the appellant recognizes the validity

of the patent and is content to rest defense entirely upon non-infringement, supporting its position by the view that the Hughes invention is a limited one in the light of prior art, and abandonment of broad claims during the course of the application through the patent office.

Except for some early minor practices, the controversy is reduced to the question as to whether the appellant's tuyère block, made and sold for replacement, as represented by exhibit 30, is infringement in view of the appellant's insistence upon a narrow construction of the claims, there being substantial concession that prior blocks infringed. Exhibit 30 typified the defendant's standard practice at the time the bill was filed. It is a tuyère block corresponding in all respects to the patent claims, except that its peripheral air channel is not at the toe of the block but inwardly therefrom. This is accomplished by notching the parallel ribs of the air channels rearwardly of the toe of the block. It is therefore contended by the appellant that since it carries its air channel defining ribs to the end of the block, it but follows prior art, and if the peripheral channel constitutes the inventive concept, it is limited by the language of the claims and their patent office history to a channel at the toe of the tuyère which the device of the appellant does not have.

There is no doubt, however, that the peripheral air channel of the accused structure furnishes an outlet through which air may flow into the fuel bed, notwithstanding slag formation at the discharge end of some of the air passages, that a cooler block of increased longevity results, and that the inventor's purpose and result are achieved by means substantially similar to those disclosed in the patent, the function of the peripheral channel being precisely the same in each structure. There is therefore substantial identity and this constitutes infringement.

Priebe patent No. 1,676,349, with its external fin adapted for vertical instead of horizontal installation and terminating short of the edge of the plate, contains no suggestion of the Hughes concept and requires no narrowing of the Hughes claims. Its fin had no function in preventing slag formation on the tuyère plate, since the evil was not a problem inherent in vertical installation.

■■■ Except where form is of the essence of the invention, one device is an infringement of another "if it performs substantially the same function in substantially the same way to obtain the same result," Union Paper Bag Machine Company v. Murphy, 97 U. S. 120, 125, 24 L.Ed. 935, and mere colorable departures do not avoid infringement, McCormick v. Talcott, 20 How. 402, 405, 15 L.Ed. 930. A close copy which seeks to use the substance of the invention, and although showing some change in form and position, uses substantially the same device, performing precisely the same offices with no change in principle, constitutes an infringement. Ives v. Hamilton, 92 U. S. 426, 430, 23 L.Ed. 494. Even where the invention must be restricted in view of the prior art to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, there is infringement where the departure is merely colorable. Duff v. Sterling Pump Co., 107 U.S. 636, 639, 2 S.Ct. 487, 27 L.Ed. 517; Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 41, 50 S.Ct. 9, 74 L.Ed. 147.

■■■ The foregoing principles apply to the assailed device unless there is merit in the claim of estoppel said to grow out of the patent office history of the claims. Original claim No. 24 of the application described the peripheral channel in somewhat indefinite language as means so disposed between the body portions of adjacent tuyère blocks "as to form, in effect, a channel which communicates with said passages," and in support of the claim the applicant asserted that he was the first to devise a tuyère "wherein the ribs defining passages for draft air terminate inwardly of the edge thereof so as to form, in effect, a channel which communicates with the passages first named." This claim was rejected as indefinite and ambiguous. It was then cancelled and claim No. 25 submitted which became claim No. 6 of the patent, and describes the means disposed between the body portions of adjacent tuyère blocks as "terminating inwardly of the forward edge of the tuyère block next above and form, in effect, with the said forward edge, a channel which communicates with said passages." We do not think that cancellation of claim No. 24 constituted abandonment of any claim to a peripheral passage inwardly of the forward edge of the block. Frey v. Marvel Auto Supply Co., 6 Cir., 236 F. 916. Even so, the question of indefiniteness and ambiguity

did not arise as to claims 1 to 4 inclusive, and all of them cover, by apt language and reasonable inference, the peripheral channel formed by means terminating inwardly of the edge of the fuel supporting portion, and there was no error in the finding of infringement.

Inadvertent initial infringement, even if its character as such be established, does not justify vacation of the injunction, in the face of persistent effort to benefit by the inventor's disclosure, albeit such effort was in response to erroneous interpretation arrived at in good faith. Lester v. American Rolling Mill Co., 6 Cir., 95 F.2d 772, does not apply.

The decree below is affirmed.