392

## BYRON JACKSON CO. v. WILSON.
### No. 685-Y Civ.

District Court, S. D. California, Central Division.

Feb. 13, 1942.

Lyon & Lyon by Leonard S. Lyon, all of Los Angeles, Cal., for plaintiff.

R. Welton Whann, of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

Letters Patent No. 1,871,825, issued on August 16, 1932, to Nelson K. Smith, "for an elevator latch" deal with an invention which, as the specifications declare, "relates to side door elevators of the type used in the raising and lowering of well casing, tubing, and the like, in the operations of drilling a well and maintaining the same in production." One of the declared objects of the invention "is to provide a latch that operates in a vertical plane, the path of movement of said latch also being in a vertical plane."

The defendant is charged in the amended complaint filed by the plaintiff, the assignee of the original inventor, with infringement of Claims 1, 4 and 11 of the Letters Patent. These claims read:

"(1) An elevator comprising a body provided with members pivoted together and recessed to form the bore of the elevator, one of said members provided with a horizontal pivot projecting forwardly therefrom and offset from the bore of the elevator, the other member provided with a lug, and a latch mounted on said pivot engageable with the lug.

"(4) An elevator comprising a body and a door pivoted together and recessed to form the bore of the elevator, a horizontal pivot projecting forwardly from the body, the axis of said pivot being in a plane that is offset from the bore of the elevator, a lug projecting laterally from one end portion of the door and provided with a shoulder, and a latch hung on said pivot and adapted to engage behind said shoulder.

"(11) An elevator comprising a body provided with (1) members pivoted together and recessed to form the bore of the elevator, one of said members being provided with a lug at its free end and the other member being provided with a horizontal forwardly pivot adjacent its free end, the axis of said pivot lying substantially parallel to the direction of initial movement of said lug when said body members are moved from their closed to their open position, and a latch mounted on said pivot having a face engageable with a face of said lug and being rotatable about said pivot into either latched or unlatched position."

The defendant has countered by denying infringement and by challenging the validity of the Letters Patent.

I am of the view that the claims are valid and infringed.

In what follows I state briefly the bases for these conclusions.

1. As to Infringement:

The patented device consists, substantially, of the following elements, as expressed in one of the claims in suit,—Claim 11. (1) An elevator comprising a body provided with members pivoted together and recessed to form the bore of the elevator, one of said members being provided with (2) a lug at its free end and the other member being provided with (3) a hori-

zontal forwardly projecting pivot adjacent its free end, (4) the axis of said pivot lying substantially parallel to the direction of initial movement of said lug when said body members are moved from their closed to their open position, and (5) a latch mounted on said pivot having a face engageable with a face of said lug and being rotatable about said pivot into either latched or unlatched position.

The only real difference between the patented device and the accused device lies in the last element. In the patented device, the latch is rotatable on the pin, i. e., it turns on the pin. In the accused device, the latch and the shaft are integral, the latch turning with the pin.

█ But, as the patent does not limit the element to either method of construction, infringement cannot be avoided by choosing one instead of the other. See McClain v. Ortmayer, 1891, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800; and see my opinion in Kammerer Corp. v. McCullough, D. C.Cal.1941, 39 F.Supp. 213, 219. This is especially true when one skilled in the art could, consistently with the teachings of the patent, adopt either construction. As a rule, in an ordinary action, admissions do not, of themselves, determine the ultimate fact in a case. This because they may be made when their legal effect may not be readily understood by a litigant. And they are very easily explained away. West v. Smith, 1879, 101 U.S. 263, 270, 25 L.Ed. 809. But in a suit involving a patent, especially where, as here, the litigant is an engineer and owner of inventions in the same field, who has appeared as a patent expert in many cases in the field of oil well machinery, his admissions acquire a special significance. At the trial, the defendant conceded both of the facts just alluded to. He designated the only element in which lay the difference between the patented device and the accused device. He also admitted that, under the specifications, this element could be constructed either in the manner in which it was embodied in plaintiff's device or in the manner in which the defendant built it in the accused device. We quote from the record:

"Q. By Mr. Leonard S. Lyon: In your deposition taken last week I believe you deny infringement of the Smith patent here in suit, on the ground that this latch pin does not serve as a pivot for the latch. Is that correct? A. I don't think I said anything about infringement, did I?

"The Court: Well, put it differently. Wherein do you think is there dissimilarity between your device and the Smith device? Put it that way. A. That is right. I do.

"The Court. Well, in what? In what Mr. Lyon just said? A. In the Smith device as shown in the patent and in the elevator in the case here, there is a partition that comes around from the body out to the side and then forward over the latch. The latch fits back inside of that. There is a solid bolt that goes through and locks solidly from this outside stationary partition to the inside of the elevator upon itself, and a flat latch member fits over that bolt and rotates above the bolt. * * * The elevator body has a section which comes forward and then turns over at a point in here where the latch bolt goes through. That also has another partition inside the latch which is integral with the body, and the bolt stocks through that inner wall. The bolt is permanently attached and passes through the outer wall, and has a nut inside the inner wall which screws up solidly and holds that bolt rigidly to each wall, both of which walls are integral with the body. The latch itself is mounted freely on the bolt and turns around the bolt, so that there is a short bearing which is simply the width of the latch at that point, and that allows the latch to wobble and possibly rotate somewhat; so that that is the way that latch is mounted. As described in the patent, there is a pivot pin projecting forward about which the latch rotates or is hung.

"Q. By Mr. Leonard S. Lyon: The pin in your device, in your elevators, of the AU and the A type, which carries the latch, projects forward, does it not? A. Yes, it projects forward, but it rotates with the latch.

"Q. And projects forward in exactly the same position and in the same direction as the pin in Exhibit 5, does it not? A. Yes, that is right. It is in roughly the same position.

"Q. The distinction that you are making is that in the Smith patented device, Exhibit 5, the latch rotates on the pin or around that pin, whereas in your device the pin and the latch move together and the pin rotates in the body; is that right? A. That is right. * * *

"The Court: Are you obtaining a different functional result or merely longer wearing? A. It would be longer wearing and avoid one of the difficulties of elevator latches. When heavy stress is on them,

they have been known to open, that is to say, open the door while the elevator is on load.

"Q. By Mr. Leonard S. Lyon: Do you base your denial of infringement of the patent in suit on the fact that the latch in the Smith patent rotates about the pin, whereas in your elevator the latch rotates with the pin? A. I don't know. I think that is a function of the court. It isn't for me to say.

"The Court: Is that the essential difference between the structures, in your opinion? A. Yes, I think that is one of the essential differences in the structures."

"Q. By the Court: When the specifications are so worded that you cannot deduct from the teaching whether one thing is permissible or is not or whether or not a thing could be done in either way, then you, in reading that patent or constructing a device according to its teachings, would be free and feel that you were within the patent in constructing it either way? A. That is right. The only thing I am doing is to point out the differences and allow the court to use his judgment on that.

"Q. I am just asking the question. This question arises quite often. A. That is correct."

■ There is no showing that the construction of the accused device achieves a different result. On the contrary, the physical exhibits show clearly identity of function. As to construction, the accused device may show a colorable departure. It does not show a substantial departure from the patented device. There is, therefore, infringement here. See, Sanitary Refrigerator Co. v. Winters, 1929, 280 U. S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147; Highway Appliances Co. v. American Concrete Expansion Joint Co., 7 Cir., 1938, 93 F.2d 113, 117, 118; Williams Iron Works Co. v. Hughes Tool Co., 10 Cir., 1940, 109 F. 2d 500, 502; E. H. Bardes Range & Foundry Co. v. American Engineering Co., 6 Cir., 1940, 109 F.2d 696, 698.

2. As To The Validity of The Patent.

The question of validity, which seemed to present some difficulty at the argument, is, on full consideration, easy of solution.

■ The seeming difficulty arises from the fact that the claims in suit do read on the prior art. One of the witnesses for the plaintiff corporation, a trained patent attorney, so admitted. This, however, is not, in itself, conclusive. See Grant v. Koppl, 9 Cir., 1938, 99 F.2d 106,

110; McRoskey v. Braun Mattress Co., 9 Cir., 1939, 107 F.2d 143, 147. The claims must be read in the light of the specifications in order to determine what the structure actually is. In an art as old as the mechanical art, with the limited number of words available to express parts of combinations, it can be seen readily that a strictly verbal construction would make havoc of the field of patents. For, if literalism controlled, claims might be read on devices entirely unlike in construction or operation. Hence the view of our own Circuit Court of Appeals, expressed in the cases just cited, that infringement is not a mere matter of words. Nor is invention to be measured solely by the words of the claims. Resort is had to the specifications and drawings to determine the nature of the elements which constitute them. See Eibel Process Co. v. Minnesota & Ontario Paper Co., 1923, 261 U.S. 45, 65, 43 S.Ct. 322, 67 L.Ed. 523; Winget Kickernick Co. v. Kenilworth Mfg. Co., 2 Cir., 1926, 11 F.2d 1; Radio Corporation of America v. Twentieth Century Radio Corp., 2 Cir., 1927, 19 F.2d 290; Highway Appliances Co. v. American Concrete Expansion Joint Co., 7 Cir., 1938, 93 F.2d 113; and see my opinion in Mantz v. Kersting, D.C.Cal., 1939, 29 F.Supp. 706, 712.

Illustrative of the danger which may flow from resorting to words only in determining invention or infringement is the fact that the claims in suit read on Richards Patent, No. 471896, issued in 1892, which, so far as it appears, was never reduced to practice, is crude, would require twice the number of movements on the part of the operator at the well, does not close automatically and would, if subjected to the great strain of a heavy load of pipe, present grave danger to the safety of the operator. [See Note 1.]

The distinctive characteristics of the patented device may be said to be these: (1) A latching lug on the free vertical end edge of the door. (2) The latch is vertical and parallel to the axis drawn through the bail holding ears of the elevator. (3) The latch moves almost horizontally. (4) The latch turns on its pivot, so that only a slight movement is required to engage the lug and latch the elevator. The claims, read in the light of the specifications and drawings, teach these elements. And they are not to be found in Richards or in any of the other prior patents upon which the defendant relies, such as: Fair, No. 221985,

November 25, 1879; Downing, 506586, October 10, 1893; Chickering, 729846, June 2, 1903; Double & Youngken, 1358943, November 16, 1920; Wigle, 1448100, March 13, 1923, or Cuthil, (British) 246714, February 4, 1926.

██ It is true, of course, that claims may fail for lack of definiteness, which is not supplied by the specifications. See Permutit Co. v. Graver Corp. 1931, 284 U.S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163; General Electric Corp. v. Wabash Appliance Corp., 1938, 304 U.S. 364, 369, 58 S.Ct. 899, 82 L.Ed. 1402; Wire Tie Mach. Co. v. Pacific Box Corp., 9 Cir., 1939, 107 F. 2d 54, 55. I do not think this is the situation here. I believe that the claims, when read in conjunction with the disclosures in the specifications and the drawings, give us a useful device, which is not in the prior art. (See note 2.)

██ The evidence shows that some thirty devices were actually constructed under the patent. And while this is not a large number, when we bear in mind the bulk and the high price of the devices, it is sufficient to show reduction to practice.

██ The device brought to court conforms to the teachings of the patent. The device does not seem to have been "pushed" by its owners. But a patentee (or owner) cannot be deprived of the benefit of an invention by the mere fact that, after reducing it to practice, he may decide not to promote its sale, but promote the sale of other similar devices which he owns. "Locking up" inventions, after patenting them, may be conducive to social harm. It may even be one of the evils of the patent monopoly. But one who, like the defendant, has, with other members of his family, sold to the plaintiff other patents on similar devices, and who was, actually, a high executive in the plaintiff's company when the patentability of the plaintiff's device was discussed before a committee of which he was a member, is not in position to complain.

██ And courts will protect a patentee even in a crowded field, and even when his invention must be restricted to the form shown and described by him, against a copy which seeks, with some change in form and position, to use the substance of the invention. See Ives v. Hamilton, 1875, 92 U.S. 426, 430, 23 L.Ed. 494; Sanitary

396

Refrigerator Co. v. Winters, 1929, 280 U. S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147; E. H. Bardes Range & Foundry Co. v. American Engineering Co., 6 Cir., 1940, 109 F.2d 696, 698.

Hence the conclusion that Claims 1, 4 and 11 of Letters Patent No. 1871825 are valid and infringed.

NOTE 1:

The crudity of this device appears from the drawings, which are here reproduced. The *letters* are on the drawings. The *numerals* were superimposed by counsel for the defendant to facilitate comparison and to show similarity between it and the device called for by the patent in suit.

W. RICHARDS.
Tool for Raising Casing Tubes or Rods.

No. 471,896.

Patented March 29, 1892.

Fig. 1    Fig. 3.

Fig. 2

NOTE 2:

For a better understanding of the opinion, we reproduce here the drawings and specifications of the patent in suit, eliminating the claims.

N. K. SMITH

1,871,825

ELEVATOR LATCH

Original Filed April 7, 1930

*Fig.1*

*Fig.2*

*Fig. 3*

*Fig. 4*

*Fig. 6*

*Fig. 5*

## ELEVATOR LATCH

Original application filed April 7, 1930, Serial No. 442,259. Divided and this application filed June 29, 1931. Serial No. 547,523.

This invention relates "to side door elevators of the type used in the raising and lowering of well casing, tubing, and the like, in the operations of drilling a well and maintaining the same in production."

An object of the invention "is to provide a latch that operates in a vertical plane, the path of movement of said latch also being in a vertical plane."

This is a division of my copending application, Serial No. 442,259, filed April 7, 1930, now matured into Patent No. 1,824,-412.

Other objects and advantages of the invention will be apparent from a detailed description of the invention when taken in conjunction with the accompanying drawings, in which

Figure 1 is a plan view of a side door elevator constructed in accordance with the provisions of this invention;

Figure 2 is a front elevation of Fig. 1;

Figure 3 is an elevation from the right of Fig. 4;

Figure 4 is a fragmental view, partly in section, on the line indicated by IV—IV, Fig. 2;

Figure 5 is a fragmental front elevation of a modified form of the invention showing the latch and a portion of the door; and

Figure 6 is a fragmental plan view of the modified form of the invention, partly in section, on the line indicated by VI—VI, Fig. 5.

Referring at present more particularly to Figures 1 to 4 of the drawings, two members or jaws 8, 9 are provided. The jaw 8 may be considered the body of the tool and the jaw 9 is commonly known as the door. The body 8 and door 9 are hingedly connected by a pivot or pin 10, the mounting of which is preferably of special construction to secure rising of the door relative to the body when the door is being opened and lowering of said door when the door is to be closed. This special mounting of the pivot will now be described:

The pivot pin 10 is not positioned parallel to the axis of the elevator bore 11 but is at an angle to said axis. Viewed from either side of the body 8, the pivot 10 extends aslant downwardly and outwardly, as shown in Fig. 3. Viewed from a position in front of the door of the elevator, the pivot 10 is positioned so that it extends aslant inwardly and downwardly, as shown in Fig. 2. The end portions of the pivot 10 are mounted in upper and lower ears 12, 13 of the body 8, said pivot being preferably fixed in said ears. The pivot 10 passes through upper and lower ears 14, 15 of the door 9, said ears 14, 15 being, in this instance, disposed between the ears 12, 13. The holes 16 in the ears 12, 13, 14, 15 are constructed so that their axes extend aslant to the axis of the bore 11, the slant being the same as described above for the pivot in order to secure the desired slant of the pivot. When the door is open it is supported by reason of the ear 15 resting on the ear 13 and when said door is closed it is not only supported by the ear 13 but is also supported at its free end by a shoulder 17 on the body 8. The lower face 18 of the ear 15 and the upper face 19 of the ear 13, being adapted to engage, are disposed at a right angle to the pivot 10 so that in the opening movement of the door 9 perfect hinging takes place and the full area of the faces 18, 19 are in engagement. Preferably the lower face 20 of the ear 12 and the upper face 21 of the ear 14, also, are disposed at a right angle to the pin, though said faces 20, 21

need not necessarily be in engagement but, preferably, are slightly spaced as indicated in Fig. 2.

The slant of the pivot 10, as viewed from either side of the elevator and as viewed from the front, has been described above, and in this instance the amount of slant is such that the upper and lower ends of the axis of the pivot are substantially on the same arc of a circle of which the axis of the bore 11 is the center, or, in other words, the upper and lower ends of the pivot are approximately the same distance from the axis of the bore.

The body 8 is provided at its opposite ends with supporting trunnions 22, which are in alignment and the prolonged axes of which pass through the axis of the bore 11. These trunnions 22 need not be further described, nor the latches 23, which cooperate therewith, as they constitute no portion of the present invention and may be of any suitable construction for connecting the elevator with links of a bail of the character employed with elevators of this type.

The bore 11 comprises the concave inner face 24 of the body 8 and the concave inner face 25 of the door 9. The face 24 extends over 180° of circular measurement while the face 25 extends over considerably less than 180° of circular measurement. The face 24 is substantially circular for 180° and said face has forwardly and outwardly flaring portions 26 so as to readily admit of the entrance of the casing or other member that is to be supported by the elevator.

Though any suitable latch may be employed with the construction hereinbefore described, there is provided a special latch which will now be described: Mounted in the body 8 and projecting forwardly therefrom is a latch pivot 30, said pivot being horizontally positioned or in other words, lying in a plane at right angles to the axis of the bore of the elevator. It is also positioned at a right angle to a vertical plane passing through the trunnions 22. Hung on the pivot 30 is a latch 31, the tip 32 of which is adapted to engage with a shoulder 33 that is formed by the front face of a lug 34 that projects laterally from one end portion of the door 9. Preferably the shoulder 33 extends aslant inwardly toward the bore and the front face of the latch tip 32 has a complementary slant, as shown at 35, so as to closely cooperate with the shoulder 33 to hold the

door in closed position. This construction of the shoulder 33 and face 35 tends to prevent opening of the latch, since, to open said latch, it is first necessary to move the door 9 inwardly in order that said latch may pass the outer end of the shoulder 33.

The latch includes an upwardly extending arm 36 and said latch is yieldingly held in latching position by a coil spring 37 which has one end resting against the latch 31 outwardly from the pivot 30 while the other end of said spring rests within an angular lug 38 that projects forwardly from the body 8. Between the lug 38 and the body is a slot 39 into which the latch projects.

The arm 36 is provided with a handle 40 that projects laterally from said arm. The handle 40 projects into a plane that passes through a handle 41 projecting outwardly from the middle portion of the door, thus facilitating release of the latch with one hand of the operator and opening of the door with the operator's other hand.

The foregoing described construction operates as follows:

Assuming that the elevator bails are connected with the trunnions 22 and that the door 9 is open, the elevator will be swung into a position to receive the casing or tubing in the recess 24 of the body 8 and the operator will then close the door 9 and coincidentally the elevator will be raised to cause the coupling or collar to seat on the seats 27, 28.

These elevators are operated very rapidly and it requires considerable quickness on the part of the operator to close the door as the closing must be done while the elevator is rising into position to engage beneath the coupling or collar. This elevator lends itself readily to rapid operation, as the operator has only to slam the door, and if it is slammed hard enough to permit the lug 34 to pass the shoulder 32 of the latch, any subsequent opening pressure exerted by the casing on the gate serves merely to lock the latch more firmly, instead of tending to release it. This desirable locking tendency is created by slanting the cooperating latch and lug faces so that the door must close tightly to release the latch, and open slightly as the latch is fully locked.

When it is desired to release the elevator from the tubing or casing, the elevator will be lowered to disengage the seats 27, 28 from the coupling or collar, the latch will be retracted and then the door will be opened. Any outward pressure on the door 25 tends to lock the latch, thus guarding against accidental opening when casing is being supported by the elevator, but when the casing is loosely contained within the elevator, the door can readily be forced inward far enough to retract the latch.

Now referring more particularly to Figures 5 and 6 of the drawings, which illustrate a modified form of the latch, the elements that correspond in function to those hereinbefore described, are indicated by the same reference characters with the addition of the suffix "a."

The principal difference between this latch construction and that above described is that this modified latch is mounted on the door and because of this certain modifications of the construction are necessary or advisable. The coil spring 37a has one end in engagement with an upwardly extending arm 42 of the latch 31a and has its other end engaging within a seat 38a in the door. In this instance, the lug 34a is angular and projects forwardly from the body 8a and the latch 31a engages behind the tip of the lug 34a. The latch 31a is mounted in a vertical slot 39a in the door and the pivot 30a extends across said slot and has its opposite ends extending through holes 43, 44 in the door. The arm 36a is of angular construction and terminates in a laterally extending handle 40a.

It will be clear that the two forms of latch operate substantially alike and that they both operate in a vertical plane, by rotation about a horizontal axis.